OPINION OF THE COURT
Fuchsberg, J.
We hold that, in appropriate circumstances such as exist in this case, a tenured teacher may, as part of a stipulation in settlement of a disciplinary proceeding brought against him, waive his or her continued right to the protections afforded by section 3020-a of the Education Law.
*453 In this article 78 proceeding, petitioner, David Abramovich, an elementary school teacher, challenged such a stipulation as violative of public policy, a view with which Special Term agreed. Following appeal, the Appellate Division entered a unanimous order of reversal. On further appeal to this court by petitioner pursuant to CPLR 5601 (subd [a], par [ii]), we now uphold that determination.
In May, 1975, the petitioner was charged with 49 specific counts of insubordination, incompetency and neglect of his teaching duties. In due course, a hearing on the charges as required by section 3020-a got underway. Petitioner was not only represented by counsel but advised as well by a union field representative and the president of the teachers’ association of which he was a member. On the third day of the hearing, after the board of education had presented written and oral testimony in support of the charges and after consultation between the petitioner and those representing him, the parties, with the concurrence of their representatives, entered into the settlement in question.
The stipulation of settlement, in essence, provided that Abramovich was to continue as a teacher, thus avoiding the substantial risk of dismissal that was entailed in allowing the hearing to go to decision, but left him subject to future dismissal, if, after a designated period of employment, his work was not found satisfactory. In implementation of the stipulation the board was to withdraw all of its charges with prejudice, thereby surrendering its right to have tried him on any of the 49 charges that had been brought against him. For his part, petitioner was to take an unpaid leave of absence until the commencement of the 1976 fall school term, when he would be re-employed, but at a different school and under a new principal. Moreover, to reinforce the likelihood that his future teaching skills would show improvement, it was agreed that, at least nine months prior to the commencement of petitioner’s re-employment, the board would provide him with a written list of areas in which he was considered deficient and the new school principal would supply written criteria setting forth the standards by which his future performance was to be judged. During his leave of absence, in order to improve his capabilities, the board also undertook to utilize this time to afford him instruction in speciality teaching areas such as remedial reading along with the opportunity to observe the teaching techniques utilized by other members of his *454 new school’s faculty. After all this, at the conclusion of the four-month term starting with the teacher’s September, 1976 reassignment and ending that Christmas, the new principal was to appraise petitioner’s performance and determine whether his services were to be retained. This decision was to be unappealable by either the petitioner or the board.
It is not disputed that the board carried out its part of the bargain. But, when, in December, 1976, the evaluation made by the principal of the new school was unfavorable to the teacher and he was dismissed, he thereafter instituted the present proceeding. Emphasizing that section 3020-a establishes the exclusive means for the dismissal of a tenured teacher and relying largely on Matter of Boyd v Collins (11 NY2d 228), he contends that, no matter the circumstances under which it may be arrived at, even the most voluntary of agreements between the parties waiving the protections of the section is an impermissible bypass of the very thing the statute is intended to secure. It is in this claimed circumvention that he would have us find public policy is offended.
Clearly, the statute does form a critical part of the system of contemporary protections that safeguard tenured teachers from official or bureaucratic caprice (see People ex rel. Callahan v Board of Educ., 174 NY 169, 178; Matter of Monan v Board of Educ., 280 App Div 14, 18). To that end, section 3020-a and the regulations promulgated thereunder by the Commissioner of Education (8 NYCRR 82.10, 82.11) attempt to harmonize the method of removing tenured teachers with the dictates of procedural due process (see Matter of Amos v Board of Educ., 54 AD2d 297, 304, affd 43 NY2d 706; Hodgkins v Central School Dist. No. 1, 48 AD2d 302, 304-305). These regulations are specific. Among other things, they require that all charges be in writing; that a determination that probable cause exists be made by a vote of a majority of all the members of the employing board before a formal written notice specifying the charges in detail and outlining the accused employee’s rights is served upon him; and that an opportunity be provided for a hearing at which the teacher has the right to be represented by counsel, to testify and to subpoena and cross-examine witnesses (Education Law, § 3020-a, subds 1-3). Indisputably, up to the point at which a mutually agreeable disposition was reached between the parties in the case before us, each of these steps had been followed faultlessly.
*455 We do not gainsay the importance of these standards both in terms of their role in protecting the rights of individual teachers whose years of satisfactory service have earned them this security and in fostering an independent and professional corps of teachers. It follows that the shield of section 3020-a is not lightly to be put aside. But that does not mean that it is never waivable. For, when a waiver is freely, knowingly and openly arrived at, without taint of coercion or duress, the sturdy public policy underpinnings of section 3020-a are not undermined.
Indeed, the contention that public policy absolutely forbids waiver of section 3020-a rights is negated by examination of the statute itself. In that connection, we first observe that the statute contains no express provision preventing a teacher from waiving its benefits (cf. Estro Chem. Co. v Falk, 303 NY 83, 86-87). At least somewhat to the contrary, subdivision 2 expressly conditions waiver of the right to a hearing upon the teacher’s "unexcused failure” to notify the board of the desire for such a hearing within 10 days of receipt of the charges; having authorized waiver by simple neglect, the statute need not be so broadly read as to prohibit the petitioner from doing so of his own free will, particularly when acting with the assistance of counsel. Especially is this so when the waiver serves as the quid pro quo for countervailing benefits, here the dismissal of the flood of charges for which the teacher was already on trial, so that he might have what he apparently regarded as a better opportunity, albeit on mutually and carefully delineated terms, to retain his position. And, as petitioner himself concedes, obviously a tenured teacher always has the option to resign, whether for the reason to which we have alluded or for any other that pleases him; so the waiver in the present case may be viewed as no more than a voluntary resignation in futuro. In thus indicating that section 3020-a is not so sacrosanct as to be impervious to waiver under all circumstances, we overrule Matter of Boyd v Collins (11 NY2d 228, supra).
Moreover, our holding today conforms with a competing public policy favoring the nonjudicial resolution of legal claims — a means of facilitating the vindication of rights without having to endure the travail and vicissitudes of litigation (see, e.g., Matter of Beekman-Downtown Hosp. v Whalen, 44 NY2d 124, 134; Yonkers Fur Dressing Co. v Royal Ins. Co., 247 NY 435, 445 [common-law litigation]; cf. Matter of Maye *456 [Bluestein], 40 NY2d 113, 117-118; Antinore v State of New York, 49 AD2d 6, 8, affd 40 NY2d 921 [arbitration]). It is no derogation of the trial process to recognize that voluntary composition of differences, arrived at, in whole or in part, by parties themselves, does not necessarily result in a lesser order of justice than an all-or-nothing decision imposed by judicial or other authority. Not surprisingly then, the comprehensive range of matters on which agreements between litigants or potential litigants is enforceable long ago came to include "stipulating] away statutory, and even constitutional rights” (Matter of New York, L. & W. R. R. Co., 98 NY 447, 453; see, also, Martin v City of Cohoes, 37 NY2d 162, 165-166; Cullen v Naples, 31 NY2d 818).
Judicial acceptance of compromises in which the most fundamental of rights are waived is not uncommon. Plea bargaining — to focus on one obvious example — may entail a compromise whereby the accused in return for sentence leniency may voluntarily and knowingly waive his right to have the State prove his guilt beyond a reasonable doubt (see, generally, People v Francis, 38 NY2d 150, 155-156, and authorities cited therein). Similarly, litigation settlements, if "not lightly, inadvertently, inadvisedly or improvidently” entered into, may be effective waivers of legal claims (Yonkers Fur Dressing Co. v Royal Ins. Co., supra, at p 446). The binding effect of agreements to submit disputes to arbitration, for most purposes forgoing resort to the courts, provides yet another illustration (see Rico Tit. Co. v Persichilli Homes, 64 Misc 2d 306, 307; cf. Matter of Writers Guild of Amer. East [Prockter Prods.], 1 NY2d 305, 308). Of the latter, relevant for the public employment case before us has been the approval of arbitration as a substitute for some of the statutory procedures safeguarding civil service employees from arbitrary, capricious and unreasonable removal (see Antinore v State of New York, supra; cf. Matter of Boyd v Collins, 11 NY2d 228, 235 [dissenting opn], supra), and, more particularly, our sanctioning of arbitration as an alternative to the review procedures of section 3020-a (subd 5) (see Board of Educ. v Associated Teachers of Huntington, 30 NY2d 122, 131-132). Thus, the principles that pervade our treatment of compromise stipulations and waivers in other areas reinforce our conclusion that section 3020-a need not be construed as prohibiting petitioner’s waiver.
Returning to the facts of this case, we emphasize that the *457 settlement here could hardly have manifested a clearer instance of a petitioner’s voluntary relinquishment of known rights. The stipulation was reached only after exhaustive discussion among counsel for the board, petitioner, his lawyer, the hearing officer and the teachers’ union representative. The record discloses that its ramifications were fully explored. At various points in the articulation of the agreement, petitioner conferred with his counsel and the others. Furthermore, at the teacher’s personal request, the entire stipulation was reread point by point for his approval even after it had been put on the record.
To further insure that petitioner fully comprehended the import of what was being reread, the hearing officer painstakingly and in no uncertain terms inquired not only into the petitioner’s understanding of its precise conditions but also as to his grasp of the nature and extent of the rights he was waiving.* It was not until the officer was satisfied on these that he accepted and approved it. Certainly, the undisputed facts before us, the careful and counseled negotiations between the parties and, particularly, the absence of any claim of duress on the part of the board, leaves no possibility that there was other than a voluntary and effective waiver. Indeed, even now, from the vantage point of hindsight, petitioner does not seriously controvert his acceptance and understanding of *458 the terms of the stipulation or the board’s good faith in entering into it.
For all these reasons, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Fuchsberg.
Order affirmed, with costs.

 For example, this exchange forms part of the record:
'THE HEARING OFFICER: * * * Do you understand, Mr. Abramov
that you have a right not to settle
this case, that you have a right
to continue with this hearing?
'THE WITNESS: Yes
'THE HEARING OFFICER: And defend yourself on the pending
charges?
'THE WITNESS: Yes
'THE HEARING OFFICER: You have a right, in other words,
to put the School Board to the proof
and prove the charges against you.
'THE WITNESS: Yes
'THE HEARING OFFICER: All right. And, that your rights are
guaranteed under Section 3020A of the
Education Law?
'THE WITNESS: Yes I do.
'THE HEARING OFFICER: All right. And, in entering into
the setttlement, you understand that
you are giving up your right to
have a continuance of this hearing?
'THE WITNESS: Yes.”