48 N.Y.2d 491 (1979)
In the Matter of Muriel Feinerman, Respondent-Appellant,
v.
Board of Cooperative Educational Services of Nassau County, Appellant-Respondent, et al., Respondents.
Court of Appeals of the State of New York.
Argued October 15, 1979.
Decided November 27, 1979.
John J. Naun and James R. Sandner for respondent-appellant.
Marshall D. Sweetbaum for appellant-respondent.
Judges JONES, FUCHSBERG and MEYER concur with Judge JASEN; Judge WACHTLER dissents and votes to modify in favor of petitioner in a separate opinion in which Chief Judge COOKE and Judge GABRIELLI concur.
*493 JASEN, J.
The dispositive issue on this appeal is whether a prospective *494 teacher may waive the right to be appointed to a three-year probationary period in a tenure-bearing position.
The facts are uncomplicated and may be briefly summarized. In February of 1974, petitioner Muriel Feinerman was appointed by respondent Board of Cooperative Educational Services of Nassau County (BOCES) as a teacher of business subjects in the BOCES adult education program  a program which was, from its inception, wholly dependent upon Federal funding. The contract of employment, duly signed by petitioner, extended only until June 30, 1974, and provided for a per diem wage. It further stated that "[t]here is no tenure with this position."
Petitioner was reappointed to her position for the 1974-1975 school year[1] and also for the 1975-1976 school term. By letter dated September 2, 1975, petitioner was again informed that her salary would be paid on a per diem basis and that no tenure would attach to her position. Petitioner signed a copy of this letter, thereby indicating her "acceptance of the terms and conditions of employment." Further, petitioner was a member of a collective bargaining unit during her term of employment and was subject to the parties' collective bargaining agreement. The express terms of the agreement then in effect provided that "[t]enure is not applicable in annually funded Day Time Adult Occupational Education projects."
Prior to the commencement of the 1976-1977 school year, the superintendent of schools, by letter dated June 18, 1976, advised petitioner that her position as a teacher of business subjects in the BOCES adult education program would be terminated as of June 30, 1976, due to decreased enrollment. Thereafter, petitioner instituted this article 78 proceeding seeking a judgment directing respondent BOCES to reinstate her to the position of teacher, with full back pay and benefits. Special Term denied the requested relief and dismissed the petition, reasoning that since petitioner had consented to be appointed to a temporary, nontenure-bearing position, she should not now be heard to complain that her dismissal worked to deprive her of the statutory benefits which attach only to a tenure-bearing teaching position.
On appeal, a unanimous Appellate Division modified the judgment of Special Term by awarding petitioner 60 days' *495 back pay. Although concluding that petitioner's position was, by law, tenure-bearing, the Appellate Division nevertheless determined that reinstatement was properly denied petitioner. The Appellate Division reasoned that even if "petitioner received the probationary appointment to which she was entitled in 1974, she still would have been subject to termination upon recommendation of the superintendent and vote of the board." (62 AD2d 1036, 1038; see Education Law, § 3031.) The order of the Appellate Division should be modified by eliminating the award of 60 days' back pay, and, as so modified, affirmed.
On these cross appeals to this court,[2] petitioner contends that her teaching position was, by law, probationary, and, thus, tenure-bearing inasmuch as there exists no authority in the Education Law which permits BOCES to appoint a teacher to a "temporary" position which is freely revocable. Proceeding on this premise, petitioner maintains that her employment was terminated wrongfully since she has accumulated greater seniority rights than two other teachers  respondents Eisner and Smith  who serve in the same tenure area as petitioner. (See Education Law, § 2510, subd 2.)[3] Further, petitioner contends that the Appellate Division erred in treating her termination as one pursuant to section 3031 of the Education Law, which delineates the procedure to be followed by BOCES when discontinuing the services of a probationary teacher.
Respondent BOCES counters these contentions by arguing that petitioner was, in fact, a temporary employee who was not entitled to protection under the tenure statutes. In support of its position, respondent emphasizes that the very terms of petitioner's employment contracts provided that she was to be employed only for a limited period of time and, further, stated, in clear and unequivocal terms, that "[t]here is no tenure with this position."
This case presents a novel issue for our consideration, to wit: whether considerations of public policy preclude BOCES from employing a teacher for a limited term in a position *496 which carries with it no tenure rights. In our opinion, considerations of public policy do not prohibit such contracts.
It should be noted at the outset that petitioner is not now claiming that BOCES engaged in coercive tactics when negotiating the terms and conditions of her employment. Indeed, the record is devoid of any indication or hint of duress whatsoever. Rather, we are concerned here with a situation where a prospective teacher freely and knowingly consented to be employed for a series of one-year terms in a nontenure-bearing position.
We begin our analysis by recognizing that the Education Law provides that "teachers and all other members of the teaching and supervising staff of the board of cooperative educational services shall be appointed by a majority vote of the board of cooperative educational services upon the recommendation of the district superintendent of schools for a probationary period of not to exceed three years". (Education Law, § 3014, subd 1.) While it has been stated that these so-called tenure statutes  promulgated by the Legislature in furtherance of the purpose to attract qualified educators and to provide teachers with job security  may not be subverted by denominating otherwise permanent teaching positions as "temporary" (see Matter of Board of Educ. v Nyquist, 45 N.Y.2d 975, revg on dissenting opn below 59 AD2d 76; Serritella v Board of Educ., 58 AD2d 645, mot for lv to app den 43 N.Y.2d 642; Matter of Board of Educ. v Allen, 12 N.Y.2d 980) or by delaying the formal appointment of a teacher to a vacancy in a permanent position (Ricca v Board of Educ., 47 N.Y.2d 385), these fact situations are not present here, for there exists an express agreement between the parties that petitioner was to be employed only for limited terms in a nontenure-bearing position. Further, even assuming that "temporary" appointments are not authorized by law (see Matter of Board of Educ. v Nyquist, 59 AD2d, at p 79, supra; Matter of Cardo, 8 Ed Dept Rep 182, 183), petitioner's position could, at best, be viewed as an appointment to a limited probationary term which, by express agreement, did not carry with it the expectation of tenure.
Thus, the precise question which must be resolved on this appeal is whether a "probationary" teacher may waive any expectation of tenure and relinquish the right to be appointed to a three-year probationary term. We now hold such waivers *497 to be valid if they are knowingly and freely made, and not the product of coercive influences.
Our holding today that a teacher may consent freely to be appointed to a nontenure-bearing position was foreshadowed by this court's decision in Matter of Baer v Nyquist (34 N.Y.2d 291). Although we held in Baer that the petitioner had not waived his statutory right to be appointed to a three-year probationary period, this finding was predicated not upon a determination that public policy prohibits such waiver, but, rather, upon the more narrow determination that the school system's lack of formality in warning petitioner that a change in teaching assignments would commence his probationary period anew militated against a finding of waiver. (Id., at p 297.) Thus, it is implicit in our holding in Baer that public policy considerations do not dictate a finding that a teacher may never waive the right to be appointed for a three-year probationary period to a tenure-bearing position.
This, of course, does not mean that a waiver should ever be implied or presumed, for as we expressly noted in the Baer case: "It is not wise, however, in dealing with a personnel system to have too much confidence in the `choices' made by a school teacher who must seek and receive accommodations from his superiors. Otherwise, doctrines of waiver and estoppel could be used facilely to avoid ever giving tenure. The tenure statutes are intended to protect the teacher and not become a trap to those not guileful enough to avoid it." (Id., at p 299.) Our holding that a teacher may consent to be appointed to a nontenure-bearing position in no way runs counter to the concerns expressed in this admonition. We stress again that a waiver must be found to have been knowingly and freely given, and not the product of coercive tactics.
Further support for our holding today can be drawn from our recent decision in Matter of Abramovich v Board of Educ. (46 N.Y.2d 450, cert den 444 US 845). In Abramovich, we held that a tenured teacher could waive the protections afforded by section 3020-a of the Education Law if such waiver was freely, knowingly and openly made. Although recognizing that this section is grounded in strong public policy considerations in that it safeguards tenured teachers from official or bureaucratic caprice by delineating a method whereby tenured teachers are to be removed, this court nevertheless concluded "that section 3020-a is not so sacrosanct as to be impervious to waiver." (Id., at p 455.)
*498 While it is true that in Abramovich we were concerned with a waiver of statutory protections accorded a tenured teacher and not, as in this case, a waiver of a teacher's right to be appointed to a three-year probationary period in a tenure-bearing position (Education Law, § 3014), this distinction is, in our opinion, of little consequence. Indeed, public policy considerations would appear to pose a greater impediment to allowing a tenured teacher to waive statutory rights which reflect the dictates of procedural due process than they would to permitting a nontenured teacher to waive his or her right to be appointed to a tenure-bearing position. It must be remembered that a probationary teacher's right to tenure is, at most, a mere expectancy, and that his or her services may be terminated by BOCES, upon recommendation of the district superintendent, at any time during the probationary period even without a hearing and without giving reasons for such action.[4] (See Matter of Lezette v Board of Educ., 35 N.Y.2d 272, 278, supra; Matter of Milman, 9 Ed Dept Rep 51.)
Moreover, section 3014 of the Education Law itself does not contain a provision which prevents a prospective teacher from knowingly and voluntarily waiving the three-year probationary period embodied therein. (See Matter of Abramovich v Board of Educ., 46 NY2d, at p 455, supra.) There is simply no indication that the Legislature ever intended this section to forbid absolutely BOCES from engaging the services of a teacher for a limited term in a nontenure-bearing position if the teacher voluntarily consents to such employment. When the parties mutually agree to the terms and conditions of employment, and, further, when such terms and conditions are embodied in a collective bargaining agreement, there is little, if any, danger that the public policy underpinnings of section 3014 will be undermined.
Returning to the case before us, we stress that petitioner had been employed pursuant to individual, one-year contracts providing that "[t]here is no tenure with this position." Petitioner willingly signed these contracts, thereby indicating expressly her "acceptance of the terms and conditions of *499 employment." Petitioner does not now allege that she was coerced or tricked into signing these agreements, and, indeed, there is no hint of duress whatsoever. Rather, the record reveals that she openly, knowingly and voluntarily consented to be appointed to a position which carried with it no tenure rights. Further, the collective bargaining agreement between the parties expressly provided that the position occupied by petitioner was to be nontenure-bearing. Under these circumstances, it must be concluded that petitioner knowingly and voluntarily waived her right to be appointed to a three-year probationary term in a tenure-bearing position. As such, when BOCES terminated petitioner's position as of June 30, 1976  the last day for which she was employed  petitioner possessed no statutory rights upon which to predicate her claim that she was discharged wrongfully.
Finally, a few qualifying remarks are necessary. It should be noted that our decision today was in no way influenced by the fact that petitioner's teaching position was dependent upon Federal funding. We have only recently held that the source of funding of a teacher's position is irrelevant to a determination of whether a teacher should be accorded protection under the various tenure statutes. (Matter of Board of Educ. v Nyquist, 45 N.Y.2d 975, revg on dissenting opn below 59 AD2d 76, supra.) Further, we would emphasize that our holding is limited largely to a situation such as we have here. Only when it is clearly demonstrated that a teacher voluntarily, knowingly and openly waived the right to be appointed to a three-year probationary term in a tenure-bearing position and there is no evidence of coercion or duress should the public policy considerations embodied in the tenure statutes be said to yield to the terms of the employment agreement between the parties.
Accordingly, the order of the Appellate Division should be modified, with costs to Board of Cooperative Educational Services of Nassau County, and as so modified, affirmed.
WACHTLER, J. (dissenting).
No teacher should be required to waive tenure rights as a condition of employment. Any "agreement" signed by an applicant for public employment, including a teacher, which purports to waive, in advance, rights which the Legislature has conferred on all public employees should be unenforceable as against public policy.
An agreement to waive tenure rights as part of the original *500 employment contract cannot be upheld by analogy to cases involving settlements. In those cases the court must reconcile the policy underlying the statute with the "competing public policy favoring the nonjudicial resolution of legal claims" (Matter of Abramovich v Board of Educ., 46 N.Y.2d 450, 455). In addition the "waiver serves as the quid pro quo for countervailing benefits" (Matter of Abramovich v Board of Educ., supra, at p 455). Here, however, there is no policy competing with the policy underlying the tenure laws. The "agreement" made at the time of hire did not settle an existing dispute, nor did it simply and reasonably provide for a substitute forum in the event of future disputes. It served only as a complete surrender of rights conferred by the Legislature. The petitioner, in fact, received nothing in exchange  except public employment without the tenure rights granted others similarly employed.
The law has always distinguished between waivers made in the course of litigation and those included in the original contract or obligation, if the rights sought to be waived are based on public policy. When the original contract also includes a complete waiver of rights conferred by statute, there is a greater likelihood that it "was the result of ignorance, improvidence, an unequal bargaining position or was simply unintended" (Kassner & Co. v City of New York, 46 N.Y.2d 544, 551). Thus it is a long-standing principle of general application that a party cannot "in advance, make a valid promise that a statute founded in public policy shall be inoperative" (Shapley v Abbott, 42 N.Y. 443, 452; Wood Co. v Horgan, 291 N.Y. 422, 426; Kassner & Co. v City of New York, supra; Crocker v Ireland, 235 App Div 760; Pine v Okoniewski, 256 App Div 519). There can be no doubt that this principle should apply to the terms of public employment. Indeed the Legislature has expressly provided that no public official may require a candidate for employment to waive any civil service rights (Civil Service Law, § 96).
The majority, of course, has not cited any authority which would permit the hiring of a public employee on condition that he or she waives tenure rights. It is doubtful that any court has upheld the practice since the adoption of the modern statutes governing civil service. It is no longer accepted that public employees may be terminated at the will of those who appointed them. The modern statutes, conferring rights and benefits on public employees, represent a legislative determination *501 that uniformity and equality in the classification and retention of public employees is essential to insure competent public service (see, e.g., People ex rel. Callahan v Board of Educ., 174 N.Y. 169).
Thus there is no reason why officials who are charged with hiring public employees should be permitted to demand waivers, or insist that they accept employment on terms other than those provided by the Legislature. Today's decision permitting the hiring of classless, rightless public employees, who are once again subject completely to the whim of hiring officials, subverts the legislative policy underlying the civil service statutes and leaves the law in this important area of public service in disarray.
Significantly the school district does not make such a drastic argument. It does not claim that it could demand that petitioner waive her tenure rights as a condition of employment or that the employment letter should be so construed. It argues that she was not appointed to a tenure-bearing position and that the employment letter therefore correctly reflects her status.
This contention, however, is erroneous (Matter of Board of Educ. v Nyquist, 45 N.Y.2d 975). On this and the other issues concerning the petitioner's probationary status, tenure area, and qualifications now before us, the Appellate Division was correct. But the court erred in concluding that the petitioner was only entitled to 60 days' pay. Although that is all she would have been entitled to if she had been terminated upon the recommendation of the superintendent and the board (Education Law, § 3031), that is not what happened in this case. Here it is conceded that the petitioner was discharged solely because her position had been abolished. Under those circumstances we have held that a probationary teacher has seniority rights over other probationary teachers in the tenure area (Matter of Lezette v Board of Educ., 35 N.Y.2d 272). Since the school district retained two probationary teachers with less seniority than petitioner within the tenure area, she is entitled to reinstatement with back pay, less amounts earned from other employment during the period in issue (Matter of Lezette v Board of Educ., supra, at pp 282, 283). The order of the Appellate Division should be modified accordingly.
Order modified, with costs to Board of Cooperative Educational Services of Nassau County, in accordance with the opinion herein and, as so modified, affirmed.
NOTES
[1] As found by the Appellate Division, petitioner's contract for the 1974-1975 school year also stated that "[t]here is no tenure with this position."
[2] Respondent BOCES appeals, pursuant to CPLR 5601 (subd [a], par [iii]), on the basis of the Appellate Division's modification awarding petitioner 60 days' back pay. Petitioner cross-appeals pursuant to leave granted by this court.
[3] Because of the ground on which we base our disposition of this appeal, it is not necessary to reach or consider the contention that section 2510 does not apply to BOCES employees.
[4] This is not to say, however, that BOCES or a board of education may dismiss a probationary teacher in violation of law or in contravention of the terms of a collective bargaining agreement. Such dismissals are subject to the provisions of the Taylor Law (Civil Service Law, art 14), the provisions of the Human Rights Law (Executive Law, art 15), and the terms of arbitration agreements. (See Matter of Lezette v Board of Educ., 35 N.Y.2d 272, 278, and citations therein.)