**Anthony F. GIGLIO, Plaintiff-Appellant,**

**v.**

**John P. DUNN, Individually and as Superintendent of Schools of Mt. Morris Central School District, Charles Hollowach, Individually and as Superintendent of Mt. Morris Central School District, Robert Bishop, Individually and as Trustee, Glenn Dalrymple, Individually and as Trustee, Ronald Hallinen, Individually and as Trustee, Michael MacArthur, Individually and as Trustee, Ann Crowley, Individually and as Trustee, Beatrice Palermo, Individually and as Trustee, and Mt. Morris Central School District, Defendants-Appellees.**

**Cal. No. 708, Docket 83–7871.**

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1984.

Decided April 20, 1984.

Eileen M. Kelley, Albany, N.Y. (Hinman, Straub, Pigors & Manning, P.C. and Donald T. Kinsella, Albany, N.Y., of counsel), for plaintiff-appellant.

James A. Spitz, Jr., Rochester, N.Y. (Harris, Beach, Wilcox, Rubin & Levey and Angela J. Panzarella, Rochester, N.Y., of counsel), for defendants-appellees.

Before VAN GRAAFEILAND and CARDAMONE, Circuit Judges, and BONSAL,* District Judge.

VAN GRAAFEILAND, Circuit Judge:

On June 28, 1982, appellant, Anthony Giglio, resigned from his position as a tenured high school principal in the Mount Morris Central School District. In this action brought in the United States District Court for the Western District of New York, Giglio contends that his resignation was coerced and that he was denied due process because a hearing did not precede the coercion. Judge Telesca dismissed Giglio's complaint for failure to state a claim, holding that a pre-coercion hearing would have been "not only impractical but virtually impossible" and that appellant's post-deprivation remedy under Article 78 of N.Y.Civ.Prac.Law was adequate to satisfy the requisites of due process. We affirm.

According to the allegations of Giglio's complaint which must be accepted here as true, *Fine v. City of New York*, 529 F.2d 70, 75 (2d Cir.1975), appellee Dunn, the District Superintendent, began to harass Giglio in 1981 with the intent of pressuring him into a nervous breakdown. By November 1981, Giglio's mental problems had become sufficiently severe that he began to work only part time. After December 30, 1981, he went on full-time disability leave.

On June 28, 1982, appellees, Hollowach, Superintendent of the Board of Cooperative Educational Services for the District, and Dunn, met with Giglio. The two men, acting at the direction of the other individual appellees, told Giglio that the Board of Education would abolish his position at a meeting that evening unless Giglio agreed to return to work by July 1, 1982. When Giglio told Dunn and Hollowach that his psychiatric problems prevented him from doing so, they told him that his position would be abolished at the Board meeting unless he agreed to resign. Giglio tendered his resignation a few hours later. On July 12, 1982, Giglio requested that his resignation be withdrawn, but, the resignation having been accepted and acted upon, his request was denied. *See Zarada v. Board of Educ.*, 42 Misc.2d 509, 510, 248 N.Y.S.2d 619 (1963).

Assuming, as appellant alleges, that his resignation was coerced, Article 78 of N.Y.Civ.Prac.Law, which is an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, made available to Giglio both a hearing and a means of redress. *See Willis v. VonHolden*, 67 A.D.2d 810, 413 N.Y.S.2d 47 (1979). Had an Article 78 hearing been held, the court, with all the facts before it, could have determined whether appellant's resignation was coerced and, avoiding the constitutional thicket, could have ordered such reinstatement and monetary relief as was appropriate. *See id.* For reasons best known to his attorney, appellant abjured this readily available remedy, preferring to base his claim on an alleged due process right to a pre-coercion hearing. We agree with the district court that, in a case such as this, a pre-coercion hearing was neither feasible nor constitutionally required.

Although a resignation ostensibly voluntary may not be such at all, it nonetheless differs from an ordinary firing in two ways. First, it is not a unilateral act on the part of the employer, and, second, it does not purport to be for cause. Instead, it is a much-used, face-saving device designed to avoid the stigma of being fired. *See Abramovich v. Board of Educ.*, 46 N.Y.2d 450, 455, 414 N.Y.S.2d 109, 386 N.E.2d 1077, *cert. denied*, 444 U.S. 845, 100 S.Ct. 89, 62 L.Ed.2d 58 (1979); Irish, *If Things Don't Improve Soon, I May Ask You To Fire Me* 9 (Anchor Press/Doubleday 1975). A school teacher, for example, may resign and avoid the filing of written charges against him with the clerk or sec-

---

* Of the United States District Court for the South-ern District of New York, sitting by designation.

retary of the school district. *See* N.Y. Educ.Law § 3020–a.

A coerced resignation does not involve a showing of cause; it is simply the submission by an employee to pressure exerted by a superior. For this reason, it is hard to visualize what sort of prior hearing the Constitution would require the employer to conduct. If there is no factual dispute between the employer and the employee, a hearing is meaningless. *See Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam). When an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance.

■ Due process requires only that a hearing be held at a meaningful time and in a meaningful manner. *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). Where a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter. *Id.* at 541–42, 101 S.Ct. at 1916; *see Engblom v. Carey,* 677 F.2d 957, 964–66 (2d Cir.1982).

■ A tenured teacher always has the option of resigning. *Abramovich v. Board of Educ., supra,* 46 N.Y.2d at 455, 414 N.Y.S.2d 109, 386 N.E.2d 1077. It follows that a school board has the option of accepting the resignation. Neither the New York Education Law nor the Constitution which looks to that Law, *see Goetz v. Windsor Central School Dist.,* 698 F.2d 606, 608 (2d Cir.1983), insists that the Board first must conduct a hearing. Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity.[1]

Because we hold that appellant was not deprived wrongfully of a hearing, we need not consider appellees' alternate contention that, when a teacher's services are terminated because of the abolishment of his office or position, there is no requirement that a hearing be held. *See Mitchell v. Board of Educ.,* 40 N.Y.2d 904, 905, 389 N.Y.S.2d 354, 357 N.E.2d 1008 (1976); *Beers v. Nyquist,* 72 Misc.2d 210, 212, 338 N.Y.S.2d 745 (1972).

The judgment of the district court is affirmed.

CARDAMONE, Circuit Judge, dissenting:

For the sake of comprehensiveness, the facts of this case, as alleged in plaintiff Anthony Giglio's complaint, may be restated as follows. Plaintiff was employed by the Mt. Morris Central School District as a tenured high school principal. Beginning in April 1981, defendant John Dunn, Superintendent of the Mt. Morris School District, intentionally began to harass plaintiff and pressure him into a nervous breakdown. Plaintiff did suffer such a breakdown in November or December of 1981 and, as a result, commenced full time disability leave.

On June 28, 1982, while under intensive medical care and psychiatric treatment, plaintiff was informed by defendants Dunn and Charles Holowach, Superintendent of Schools for the Livingston-Steuben-Wyoming Board of Cooperative Educational Services, that his position as high school principal would be abolished immediately unless he agreed to return to work by July 1. When plaintiff replied that he could not return in three days, Dunn and Holowach then told plaintiff that unless he agreed to resign, his position would be abolished that evening. Later that day, and as a direct result of these threats, plaintiff tendered his letter of resignation. On information

---

1. It is possible that appellant now is precluded from instituting an Article 78 proceeding by the four-month limitation period contained in section 217 of N.Y.Civ.Prac.Law. *But see* N.Y.Civ. Prac.Law § 205; *Storch v. Gordon,* 37 Misc.2d 731, 733, 236 N.Y.S.2d 410 (1962). However, so long as appellant had a reasonable time in which to seek Article 78 relief, he cannot make a legitimate claim of due process violation because his claim now may be barred. *See Ornstein v. Regan,* 604 F.2d 212, 214 (2d Cir.1979).

and belief, plaintiff asserts that the School District's Board of Education never planned to abolish his position on June 28 and did not actually do so until September 8, 1982 when it created a new position of K–12 principal—a position in which more than 50 percent of the duties were previously performed by the high school principal.

Plaintiff claims, in effect, that defendants coerced him into resigning and that a coerced resignation is equivalent to being fired. Accordingly, he brought this action, pursuant to 42 U.S.C. § 1983, seeking damages (backpay), injunctive relief (reinstatement) and a declaratory judgment that his due process rights had been violated. The essence of the complaint is that plaintiff was forced from his tenured position, and thus deprived of a fundamental property right, without first having received notice and a hearing.

Upon defendants' motion, Judge Telesca dismissed the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). He reasoned, in light of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that it would have been virtually impossible to give plaintiff a pre-deprivation hearing and that the post-deprivation remedy of an Article 78 proceeding would have satisfied the requisites of due process. For the reasons discussed below, I believe the decision of the district court was incorrect as a matter of law and, therefore, that this matter should be reversed and remanded for further proceedings.

## I

The issue in this case is whether Giglio's complaint stated a claim under 42 U.S.C. § 1983 of deprivation of property without due process of law. Since dismissal below was premised on Fed.R.Civ.P. 12(b)(6), all factual allegations in the complaint must be accepted as true. *Hospital Building*

*Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976). Moreover, dismissal should not have been granted "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

To show a violation of 42 U.S.C. § 1983, a plaintiff must prove that the conduct complained of was committed by a person or persons acting under color of state law and that the conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.[1] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). There can be no doubt that the allegations in the complaint satisfy the first prerequisite to a Section 1983 action. The conduct complained of implicates two Superintendents in the Mt. Morris School District (Dunn and Holowach), five trustees of the School District and the School District itself. All of these defendants are state actors for purposes of Section 1983, and all acted under color of state law. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The second element was also met: Plaintiff's tenured position was a fundamental property right within the meaning of the Fourteenth Amendment, *see Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), and the alleged loss of this position amounted to a deprivation. The crucial inquiry, therefore, is whether that deprivation occurred without due process of law or, more specifically, whether plaintiff was entitled to a pre-deprivation hearing.

The district court and defendants rely heavily upon *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt*, the Supreme Court rejected the proposition that a state must, in all circum-

---

1. 42 U.S.C. § 1983 (Supp. III 1979) provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

stances, provide a hearing prior to the initial deprivation of property. The Court observed that in most cases where due process requires a pre-deprivation hearing, the deprivation of property results from some established state procedure and "process" can be offered before any actual deprivation takes place. *Id.* at 537, 101 S.Ct. at 1914. *Parratt* involved the allegedly negligent mishandling of a prisoner's package by a prison guard. The prisoner sought to invoke Section 1983 by claiming that the post-deprivation remedy of a tort action against the guard in state court was insufficient and that due process mandated a pre-deprivation hearing. Reasoning that the loss of property resulted from a random and unauthorized act of a state employee and that the state (*i.e.*, presumably those officials in charge of instituting hearings) can hardly predict when such negligent acts will occur, the Court in *Parratt* ruled that it would have been virtually impossible to provide the prisoner with a meaningful pre-deprivation hearing. Thus, the touchstone in *Parratt* was the impracticability of holding a hearing prior to the claimed deprivation. *Id.* at 539–41, 101 S.Ct. at 1914–16. Once the Court found impracticability, its remaining task was to determine whether the post-deprivation remedy of a tort action provided the plaintiff with a meaningful opportunity to be heard. In fact, a tort action would have fully compensated the prisoner for his loss and it was therefore deemed sufficient. *Id.* at 543–44, 101 S.Ct. at 1916–17.

Defendants reason by analogy to *Parratt* that because their allegedly wrongful acts were wholly unpredictable, they could not have arranged for a pre-deprivation hearing as is required by N.Y.Educ.Law § 3020–a (McKinney 1981). Additionally, defendants contend that the New York State post-deprivation remedy of an Article 78 proceeding would adequately have protected plaintiff's due process rights. Neither assertion is persuasive.

## II

First, the inquiry into whether it was practicable to arrange for a hearing prior to Giglio's allegedly coerced resignation presents a question of fact, not appropriate for disposition under Rule 12(b)(6). More importantly, there is strong reason to believe that a pre-deprivation hearing was viable. The complaint states that on June 28, 1982 two of the defendants approached plaintiff and threatened that the School District would abolish his position "*that evening,* unless he agreed to resign." (Emphasis supplied.) These allegedly intentional, not negligent, acts can hardly be called "unpredictable"; nor was it unpredictable that plaintiff responded by resigning several hours later. Since the acts were not unpredictable and a pre-deprivation hearing possible, the analogy to *Parratt* must fail. To hold otherwise would permit state actors such as defendants effectively to avoid due process requirements by intentionally coercing tenured employees into resigning, rather than by firing them outright.

The district court gave considerable weight to the phrase "established state procedure"—a phrase introduced by *Parratt* and echoed in several later opinions. *See, e.g., Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982); *Kumar v. Marion County Common Pleas Court,* 704 F.2d 908, 910 (6th Cir.1983). The district court apparently concluded that a predeprivation hearing was not required because defendants' acts were not pursuant to an "established state procedure." This Court recently rejected a similar position in *Burtnieks v. City of New York,* 716 F.2d 982 (2d Cir.1983), a case the majority fails to address. We said there that "decisions made by officials with final authority over significant matters, which contravene the requirements of a written municipal code, can constitute established state procedure." *Id.* at 988. In the present case, defendants include two Superintendents of the Mt. Morris School District, six Trustees of the Board of Education of that School District and the School District itself. Under New York State law these defendants are clothed with final authority over all matters pertinent to this case, including procedures related to hearings, ultimate termination of employees and abolition of existing

positions. The district court ignored these facts and in doing so misconstrued *Parratt*. As noted, the crux of *Parratt* was the impracticability of providing any pre-deprivation process. To apply terms such as "established state procedure" out of context and without reference to the underlying policies erroneously exalts form over substance.

## III

The second error committed by the district court and the majority of this panel is in finding that the post-deprivation remedy of an Article 78 proceeding provides adequate due process. In determining the timing and nature of the required hearing, courts must balance "the importance of the private interest and the length or finality of the deprivation; the likelihood of governmental error; and the magnitude of the governmental interests involved." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982) (citations omitted). Above all, it is clear that "the State may not *finally* destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Id.* (Emphasis added.) Thus, in *Burtnieks v. City of New York, supra,* 716 F.2d at 987–89, a post-deprivation remedy in tort was held inadequate where the City demolished plaintiff's building without first considering the merits of her claims.

Applying the *Logan* factors to this case, a post-deprivation Article 78 proceeding would *not come close to affording plaintiff the safeguards of a pre-deprivation hearing.* The importance of plaintiff's interest in his livelihood is unarguably great. Also, the deprivation here is essentially final since the position of high school principal has been abolished. With respect to finality, the position could, of course, be recreated. Yet, so could Mrs. Burtnieks' building. No doubt the State has a substantial interest in assuring that its high school principals are mentally and emotionally fit; nevertheless, it is hard to discern how that interest would have been compromised by granting plaintiff a pre-deprivation hearing.

Thus, not only was a pre-deprivation hearing viable, but, in addition, a post-deprivation remedy would not have provided plaintiff with a meaningful opportunity to be heard. An affirmance, therefore, would require this Court to hold as a matter of law that a "forced resignation" could never constitute a "discharge." Such a holding would contradict both common sense and the decisions of several courts that have passed on this question in different contexts. *See, e.g., Dabney v. Freeman,* 358 F.2d 533, 535 (D.C.Cir.1965) (a separation from federal service by means of a coerced resignation is, in substance, a discharge); *Paroczay v. Hodges,* 219 F.Supp. 89, 94 (D.D.C.1963) (involuntary resignation from government employment constitutes a discharge where employee is forced to make immediate choice between resigning and facing charges); *Willis v. VonHolden,* 67 A.D.2d 810, 413 N.Y.S.2d 47 (4th Dept. 1979). If Giglio had signed the letter of resignation while defendants held a gun to his head, few would argue that the resignation was not coerced or that it differed in substance from a simple termination. While here there was no gun, that is not to say there was no coercion. The complaint plainly alleges coercion, and the district court might well find such coercion where a high school principal, undergoing psychiatric treatment, resigns under threat of a humiliating public discharge. Again, this is a question of fact and, accepting as true the allegations in Giglio's complaint, this Court should find that plaintiff stated a claim upon which relief can be granted.

## IV

Defendants argue that N.Y.Educ.Law § 3020–a ordinarily guarantees due process, that plaintiff alleges a violation of this state law and thus that Giglio's remedy is an Article 78 proceeding. While this view is correct as far as it goes, it tells only half of the story. It is true that defendants violate state law when they disregard Section 3020–a, and plaintiff may seek vindication of these state law rights in a timely instituted Article 78 proceeding. But Giglio alleges more than a claim under

state law. He also alleges a federal constitutional claim for deprivation of property without due process. This federal claim has a corresponding federal remedy—42 U.S.C. § 1983. In other words, Article 78 and Section 1983 are, for Giglio's purposes, alternative or parallel remedies, both of which he is entitled to claim. And it is well settled that a plaintiff need not exhaust the former before pursuing the latter. *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 482, 5 L.Ed.2d 492 (1961).

Accordingly, for all the reasons set forth above I respectfully dissent.