■ In the Matter of LIONEL ARFIN et al., Appellants, v GORDON M. AMBACH, as Commissioner of Education, et al., Respondents. (And Another Related Proceeding.) — Yesawich, Jr., J. Appeal from a judgment of the Supreme Court at Special Term (Bradley, J.), entered March 16, 1984 in Albany County, which dismissed petitioners' applications, in two proceedings pursuant to CPLR article 78, to annul determinations of respondent Commissioner of Education denying petitioners' requests to have certain service credits included in the computation of their longevity increments.

Petitioners are 41 teachers in the Nanuet Union Free School District (School District). All had previously been employed in other districts, and all were hired by the School District before the repeal of former Education Law § 3102 (6). For their prior out-of-district service, petitioners received "transfer credits" which enhanced their salaries. Before its repeal in 1971, former Education Law § 3102 (6) specified: "[S]chool authorities may grant transfer credit to a teacher in their discretion, provided, however, that such authorities shall not thereafter have the power to revoke any such grant heretofore or hereafter made to

a teacher, and provided, further, that any year of transfer credit so granted shall be counted as a year of service in the district."

In 1977, petitioners, represented by the Nanuet Teachers' Association (Association), filed a grievance charging that the School District's Board of Education had failed to honor transfer credits when computing their salaries. Pursuant to the collective bargaining agreement then in effect, the grievance was ultimately submitted to an arbitrator for resolution. Before the arbitrator made his determination, the School District and the Association, with the arbitrator's approval, settled their disagreement. The settlement, memorialized in a consent decree dated June 9, 1978, provided that certain senior teachers would receive incremental salary benefits derived from transfer credits. However, petitioners were not among those teachers. There was no appeal from that agreement which, with slight modification, was later incorporated into a collective bargaining agreement effective from July of 1978 to June of 1982.

Three years after execution of the consent decree, petitioners applied to the Commissioner of Education to have him declare void both the settlement and that portion of the collective bargaining agreement relating to transfer credits. Their petition also sought awards for back pay, that they would have been paid had the School District included their prior service credit in computing their eligibility for longevity increments. The Commissioner concluded that petitioners were bound by the consent decree and the collective bargaining agreement, and, further, stated that the appeals were time barred. Special Term, for essentially the same reasons, sustained the Commissioner's determination, prompting this appeal by petitioners. We affirm.

Public policy does not absolutely forbid a teacher's voluntary waiver of critical statutory rights, particularly "when the waiver serves as the quid pro quo for countervailing benefits" (*Matter of Abramovich v Board of Educ.*, 46 NY2d 450, 455, *cert denied* 444 US 845; *see, Matter of Feinerman v Board of Coop. Educational Servs.*, 48 NY2d 491, 497). Thus, although former Education Law § 3102 (6) made transfer credits irrevocable for purposes of salary computations (*see, Matter of Union Free School Dist. v Nyquist,* 38 NY2d 137, 142), that irrevocable right may, nevertheless, be waived if the waiver is knowing and intelligent (*see, Matter of Greenwich Cent. School Dist. v Ambach,* 107 AD2d 910, *lv denied* 64 NY2d 608). Unlike the aggrieved petitioners in *Matter of Greenwich Cent. School Dist. v Ambach (supra)*, who "immediately protested the reduction in their transfer credits", petitioners herein registered no objection until three years after the consent decree. And that decree, it

should be noted, represented a compromise designed to avoid a substantial reduction in the School District's teaching staff which would have resulted from the fiscal impact of utilizing full transfer credits.

Significantly, the issue of longevity was given long and public consideration. It was scheduled for discussion at Association meetings in October and November of 1977 and March and May of 1978. Within two weeks of the consent decree, the School District and the Association called a special meeting to discuss the longevity pay issue, and an entire year elapsed before the Association, petitioners' representative, and the School District reached the collective bargaining agreement which ultimately incorporated the still unopposed consent decree. In an effort to refute a finding of a knowing waiver, petitioners relied entirely on the bare, conclusory allegation that many of them were unaware of the consent decree or its effect at the time it was entered into.

We perceive the record as furnishing ample basis for concluding that petitioners knowingly waived their right to transfer credits in order to obtain a desired aggregate benefit, i.e., the avoidance of a substantial reduction in the number of teachers. Their inaction after publication of the arduously negotiated consent decree further indicates their willingness to relinquish transfer credit rights. Accordingly, we also find no abuse of discretion or unreasonableness on the Commissioner's part.

Judgment affirmed, without costs. Mahoney, P. J., Main, Casey, Mikoll and Yesawich, Jr., JJ., concur.