PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 4/30/96**

TENTH CIRCUIT

---

CAROL PARKER,

       Plaintiff-Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
NO. I-003 OF OKMULGEE COUNTY,
OKLAHOMA, also known as Morris
Public School,

       Defendant-Appellee.

No. 95-7081

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. CV-94-466)

---

Submitted on the briefs:

Richard B. Wilkinson, Oklahoma Education Association, Oklahoma City, Oklahoma, for
Plaintiff-Appellant.

K. Clark Phipps and David A. Russell of Atkinson, Haskins, Nellis, Boudreaux, Holeman,
Phipps & Brittingham, and J. Douglas Mann and Jerry A. Richardson of Rosenstein, Fist &
Ringold, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before KELLY and BARRETT, Circuit Judges, and BROWN,[*] Senior District Judge.

---

     [*]      Honorable Wesley E. Brown, Senior District Judge, United States District
(continued...)

BROWN, Senior District Judge.

Plaintiff Carol Parker appeals from a district court order granting summary judgment in favor of the defendant school district on her cause of action for violation of due process rights in public employment under 42 U.S.C. § 1983.[2]  We review this determination de novo, applying the same standard used by the district court pursuant to Fed. R. Civ. P. 56(c). Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995).  Under that standard, we may affirm summary judgment for the school district only if the materials of record "show that there is no genuine issue as to any material fact and that the [District] is entitled to judgment as a matter of law."  Id. (internal quotation omitted).  For the reasons that follow, we reverse and remand the cause for further proceedings.

Ms. Parker claims the school district deprived her of a property right without due process when it declined to renew her contract for the 1994-95 school year in violation of the statutory scheme governing the employment of public school teachers in Oklahoma, known as the "Teacher Due Process Act of 1990" or TDPA.  Okla. Stat. Ann. tit. 70, §§ 6-101.20

[*](...continued)
Court for the District of Kansas, sitting by designation.

[2]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

to 6-101.30; see also Okla. Stat. Ann. tit. 70, § 6-101 to 6-101.15 (related provisions of school code). The school district admits it is "self evident and undisputed" that the TDPA creates employment interests invoking constitutional protection, Appellee's Answer Br. at 7; see, e.g., Short v. Kiamichi Area Vocational-Technical Sch. Dist. No. 7, 761 P.2d 472, 475-76 (Okla. 1988), cert. denied, 489 U.S. 1066 (1989); Wood v. Independent Sch. Dist. No. 141, 661 P.2d 892, 894 (Okla. 1983), but argues that by accepting a contract crafted to elide  pertinent TDPA provisions, Ms. Parker voluntarily waived her rights in this regard.

Ms. Parker was originally hired by the school district as an English teacher with an extra-duty coaching assignment for the 1990-91 school year under a contract clearly falling within the compass of the TDPA. Accordingly, as a "probationary teacher," she could not thereafter be dismissed or nonreemployed except for cause. Okla. Stat. Ann. tit. 70, § 6-101.22B. Moreover, even if a renewal contract were not formally executed for the ensuing year, absent timely notice of nonrenewal her teaching contract would automatically be extended "and such employment and continuing contract [would] be binding on [her] and on the school district." Okla. Stat. Ann. tit. 70, § 6-101E. These principles applied only to her teaching position, however, as "extra duty assignments are too far removed from . . . primary teaching responsibilities . . . to be protected under the [TDPA]." Maupin v. Independent Sch. Dist. No. 26, 632 P.2d 396, 399 (Okla. 1981).

The nonrenewal deadline for the 1991-92 year passed without any action by the school district. Hence, Ms. Parker began the year in August under a continuing contract pursuant

3

to § 6-101E. At some point, however, she evidently was told she had to sign a (new) written contract before she could be paid in accord with Okla. Stat. Ann. tit. 70, § 5-125C (prohibiting payment of teacher "who does not have a written contract required by law"). See Appendix to Appellant's Br. in Chief (App.) doc. 6, at 8. Actually, the school district had no basis for imposing such a condition on payment of Ms. Parker's salary, as the continuing contract provided by § 6-101E is an express exception to the requirement of a written contract, see § 6-101A. More importantly for our purposes, the new contract made Ms. Parker's teaching position, with its attendant rights under the TDPA, contingent upon her perceived success as a coach. She signed the contract, and executed similar ones for 1992-93 and 1993-94. Ultimately, the school district invoked the coaching clause to nonrenew her contract for 1994-95, in a manner otherwise contrary to TDPA provisions governing the procedural and substantive rights of fourth-year (i.e., "career" or tenured) teachers.

Ms. Parker then filed this action, claiming the school district's contractual efforts to circumvent the TDPA were ineffective for two reasons. First, to the extent the contracts for 1992 through 1994 purported to negate the employment rights mandated by the state legislature (and implemented by the first contract), they were invalid as against public policy. Second, even if otherwise permissible, her contractual waiver of TDPA protections was not voluntary under the circumstances. The district court held that the challenged contractual terms were valid, deemed Ms. Parker's assent thereto voluntary as a matter of law, and granted summary judgment on the ground that the protected interests created by the TDPA

4

had been waived. Because we hold that the contract terms waiving the TDPA were invalid, we reverse summary judgment without deciding whether the purported waiver was voluntary.

The rule in Oklahoma regarding the validity of contractual provisions waiving statutory rights is most fully expressed in Isenhower v. Isenhower, 666 P.2d 238 (Okla. Ct. App. 1983):

> While we agree that a right may be waived whether conferred by law or contract, when a statute contains provisions that are founded upon public policy, such provisions cannot be waived by a private party if such waiver thwarts the legislative policy which the statute was designed to effectuate. Courts must give effect to legislative acts and may not amend, repeal or circumvent them.

Id. at 241 (footnotes omitted); see Rupp v. City of Tulsa, 214 P.2d 913, 916-17 (Okla. 1950)(party may waive rule of law or statute "where it is exclusively a matter of private right, and no considerations of public policy . . . are involved"); see also Dycus v. Belco Indus., Inc., 569 P.2d 553, 556 (Okla. Ct. App. 1977)("contracts or portions thereof in derogation of our statutes will not be enforced by courts of this state"); Tulsa Energy, Inc. v. Oklahoma Oil & Gas Management, Inc. (In re Tulsa Energy, Inc.), 181 B.R. 544, 548 (Bankr. N.D. Okla. 1995)(same). In contrast, the cases relied on by the district court for its very expansive view of permissible waiver involved contract terms that did not violate statutory provisions and, thus, would have required the clearest of judicially-articulated policy justifications for interference with the parties' private agreements. See Shepard v. Farmers Ins. Co., 678 P.2d 250, 251-52 (Okla. 1983); Johnston v. J.R. Watkins Co., 157 P.2d 755, 757-58 (Okla. 1945).

5

The rule acknowledged in Isenhower, which is widely accepted, see generally 28 Am. Jur. 2d Estoppel & Waiver § 161 (1966), has been held by several state courts specifically to preclude purported contractual waivers of teachers' statutory tenure/due process rights. See, e.g., Kelso Educ. Ass'n v. Kelso Sch. Dist. No. 453, 740 P.2d 889, 893 (Wash. Ct. App. 1987); Bruton v. Ames Community Sch. Dist., 291 N.W.2d 351, 356 (Iowa 1980); Faust v. Ladysmith-Hawkins Sch. Sys., 277 N.W.2d 303, 306-307 (Wis. 1979); see also Ex Parte Wright, 443 So. 2d 40, 42 (Ala. 1983)(holding "an attempted waiver of the protection afforded by teacher tenure laws is ineffectual on public policy grounds"); cf. Dugan v. Stockton State College, 586 A.2d 322, 325 (N.J. Super. Ct. App. Div. 1991)(rejecting waiver because statute "makes tenure a mandatory term and condition of employment, one which supersedes and cannot be overridden by contract provisions"). The only pertinent authority cited by the school district, Feinerman v. Board of Coop. Educ. Servs., 399 N.E.2d 899 (N.Y. 1979), reached a contrary conclusion on waiver without considering the stated rule operative in Oklahoma and the cases cited above. Indeed, Feinerman expressly acknowledged the very sort of "strong policy considerations" underlying New York's tenure statute, id. at 902, that would support an opposite determination under the principle we must follow here.

The Oklahoma courts have expressly recognized the public function served by the statutory tenure/due process scheme, which "promotes good order and the welfare of the State and school system by preventing the removal of capable and experienced teachers for reasons arising solely from political or personal whim." Babb v. Independent Sch. Dist. No.

6

I-5, 829 P.2d 973, 975 n.14 (Okla. 1992)(citing Lovelace v. Ingram, 518 P.2d 1102, 1104 (Okla. 1973)).  Ms. Parker's post-1990 contracts, which permit her summary removal as teacher if her supplementary position as coach--accorded no TDPA protection--ceased to suit the school district, directly conflict with the stated purpose of the statutory scheme.[3] Accordingly, adhering to Oklahoma law prohibiting the waiver of public-interest statutory rights, we hold that the purported waiver of TDPA protections executed by the parties was invalid.  See generally id. at 977-78 ("The courts cannot sanction school boards' actions, whether taken in good or bad faith, which manipulate job assignments in a manner that . . . circumvents the purpose and spirit of the tenure law.").

Although the preceding rationale for our holding is complete in itself, certain arguments of the school district warrant some direct response.  First, the school district insists that the waiver principle guiding our analysis "proves too much" because "no person could

---

[3]    Indeed, the school district's effort to rationalize this exclusion of TDPA rights by subordinating Ms. Parker's teaching function to the imperatives of high school sports is just as repugnant to the law as the exclusion itself.  As noted, Oklahoma deems the connection between "primary teaching responsibilities" and "extra duty assignments" too remote to extend TDPA protections afforded the former to the latter.  Maupin, 632 P.2d at 399.  If a dog cannot wag its disjointed tail, such a tail surely cannot wag the dog.  See id. (teaching and coaching must be kept separate for TDPA purposes because, just as a school "should [not] suffer from [a teacher's] possible shortcomings in the extracurricular areas . . .[,] a fine academician [should not] suffer because he/she is poorly suited to certain extracurricular assignments").  See generally Swager v. Board of Educ., 688 P.2d 270, 276 (Kan. Ct. App. 1984)(school authority cannot make coaching duties part of a teacher's primary employment contract by combining teaching and coaching duties in a single instrument).

ever lawfully waive any statutory right in any contract," and cites as a counter-example <u>Perry v. Perry</u>, 551 P.2d 256, 258 (Okla. 1976)(ex-spouses may voluntarily agree to deviate from statutory provision regarding usual termination of support alimony). Appellee's Answer Br. at 8. The obvious flaw in this argument is the school district's failure to acknowledge the critical public-policy element in the waiver principle applied here. The point to be drawn from <u>Perry</u> is that the statutory guideline for termination of support alimony is not a directive rendered mandatory by the public interest. That particular judgment is no more relevant to this case than the contrasting one in <u>Isenhower</u> that the statutory provisions relating to alimony in lieu of property division do constitute such a directive. 666 P.2d at 241. It should be plain from the discussion above that our application of Oklahoma's waiver principle turns on the established public-interest character of the particular statutory scheme under consideration.

The school district notes that in <u>Miller v. Independent School District No. 56</u>, 609 P.2d 756, 759 (Okla. 1980), the Oklahoma Supreme Court permitted a school board to deviate from statutory provisions to <u>enlarge</u> a teacher's procedural rights, and argues that this holding implies the converse authority to deviate from the TDPA to a teacher's detriment as well. Again, the flaw in the school district's reasoning is readily discernible. The fact that public policy demands recognition of (at least) certain minimal procedural guarantees does not entail--indeed, it appears to belie--the conclusion that any further safeguards afforded the protected group would be contrary to the public interest. Significantly, the Oklahoma

8

Supreme Court characterized the statutory notice provisions augmented by the school board in <u>Miller</u> as "minimum standards." <u>Id.</u> at 759; <u>Garner v. Johnson</u>, 609 P.2d 760, 762 (Okla. 1980). Further, in <u>Raines v. Independent School District No. 6</u>, 796 P.2d 303, 304 (Okla. 1990), where a school district attempted to waive certain statutory provisions which, like the TDPA rights in this case, were considered mandatory limitations on its authority, the Oklahoma Supreme Court had no difficulty in holding the waiver invalid.

Finally, the school district contends that statutory recognition of certain exceptions to TDPA coverage, specified in Okla. Stat. Ann. tit. 70, § 6-101.23 (exempting temporary, substitute, and adult education positions), indicates the legislature's intent to leave the extension or restriction of TDPA rights in particular cases to the discretion of local school boards. This ambiguous contention is either inapposite or incorrect. If the school district means that the legislature intended to afford local school boards the discretion to utilize, when applicable, any of the specific exceptions provided in the statute, its point appears correct but is irrelevant, as the hybrid teacher/coach contract fashioned here is not authorized by § 6-101.23. If the school district means that the careful delineation of particularized exemptions from TDPA coverage implies a legislative intent to permit local school boards the discretion to craft additional, ad hoc exceptions not specified in § 6-101.23, its point is patently erroneous. This is a paradigmatic case for application of the "time-honored canon of construction known by the Latin phrase of <u>expressio unius est exclusio alterius</u>," or "the

9

expression of one thing is the exclusion of another." Greenberg v. Wolfberg, 890 P.2d 895, 906 & n.54 (Okla. 1994).

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the cause is REMANDED for further proceedings consistent with this opinion.