David J. MONROE, Plaintiff,

v.

SCHENECTADY COUNTY, William Barnes, Individually and as Schenectady County Sheriff, Harry Buffardi, Individually and as Schenectady County Undersheriff, Donald Williams, Individually and as a Schenectady County Correction Officer and President of Local Union 3874, Walter Cavanaugh, Individually and as a Representative of Council 82 and the Schenectady County Sheriff's Benevolent Association, Local 3874 and Council 82, Afscme, AFL–CIO, Defendants.

No. 95–CV–0910.

United States District Court,
N.D. New York.

Sept. 25, 1997.

Hayes & Hayes, Albany, NY (Harry R. Hayes, III, of counsel), for Plaintiff.

Thomas B. Hayner, Schenectady County Attorney, Schenectady, NY (Robert A. De Paula, of counsel), for Defendants.

## MEMORANDUM, DECISION & ORDER

MCAVOY, Chief Judge.

This action, brought under 42 U.S.C. § 1983, centers on disciplinary actions taken by the Schenectady County Sheriff's Department ("the Department") against one of its employees, plaintiff David J. Monroe. Plaintiff claims, *inter alia*, that such actions were taken in violation of his due process rights under the Fourteenth Amendment to the United States Constitution. Defendants Schenectady County, William Barnes and Harry Buffardi now move for summary judgment.[1]

## I.  BACKGROUND

### A.  Facts:

Plaintiff was hired by the Department in 1985 as a provisional correction officer.

---

1. By stipulation and order signed March 18, 1997, plaintiff agreed to dismiss, with prejudice, all claims against defendants Donald Williams, Walter Cavanaugh, the Schenectady County Sheriff's Benevolent Association, Local 3874 and Council 82, AFSCME, AFL–CIO.

Plaintiff was promoted to Correction Sergeant in 1988, and to Correction Lieutenant in 1992. The 1992 position was a permanent appointment under the New York Civil Service Law. At all relevant times, plaintiff was a member of the Schenectady County Sheriff's Benevolent Association, Local 3874 ("the Union"), and was assigned to the Schenectady County Jail. His supervisors were defendant William Barnes, the County Sheriff, and defendant Harry Buffardi, the County Undersheriff.

Between 1992 and 1996, a collective bargaining agreement ("CBA") was in effect between defendant Schenectady County, the Department and the Union. Article 13 in the CBA covered disciplinary procedures, wholly replacing the statutory provisions in Sections 75 and 76 of the New York Civil Service Law. Def. Rule 7.1(f) Stat. Ex. H at 30.[2]

On April 29, 1994, plaintiff was on duty at the Schenectady County Jail when a group of inmates were moved from one section of the jail to another. This transfer later became the subject of an investigation by the U.S. Justice Department concerning allegations that inmates were beaten by correction officers during the transfer. On April 30, 1994, plaintiff told Major Robert Elwell, another Department employee, that if plaintiff was questioned by authorities about the incident of the previous day, he would tell the truth about what he saw.[3]

On June 20, 1994, plaintiff was called to Barnes' office, where he met with Barnes, Buffardi, and Elwell. Barnes confronted plaintiff with disciplinary charges, without specifying what the charges were. Barnes then told plaintiff that if plaintiff did not resign his lieutenant's position, the charges would be filed against him and he would be terminated. In the meantime, Barnes concluded, plaintiff was suspended pending investigation of the charges. He was told to leave the jail immediately. Plaintiff told Barnes that he would not resign his lieutenant's position. Pl. Aff. ¶ 10.

On July 20, 1994, disciplinary charges dated five days earlier were served on plaintiff. These charges terminated plaintiff's employment with the Department. "Just cause" for the termination was supported in the charges by the following allegations: (1) plaintiff's failure to report his March 23, 1994 arrest for driving while intoxicated ("DWI") within 24 hours of the event, as required by the Department's Code of Conduct; (2) plaintiff's alleged sexual harassment of a number of his female colleagues on several occasions, mostly during March through May of 1994; and (3) various violations of plaintiff's responsibilities, including failure to timely respond to a medical code and playing ping-pong in the inmate recreation area with on-duty officers. Def. Rule 7.1(f) Stat. Ex. G at 1–4.[4] On July 27, 1994, the Union filed a grievance on plaintiff's behalf requesting dismissal of all charges and penalties.. Def. Rule 7.1(f) Stat. Ex. J. On September 29, 1994, the Union demanded arbitration, *Id.* Ex. K, and an arbitration hearing was scheduled for early January, 1995.

On December 7, 1994, plaintiff met with his Donald Williams, Walter Cavanaugh and Buffardi at a hotel in Schenectady to discuss the grievance. Plaintiff indicated that he was not going to accept a deal. At some point during this meeting, however, Buffardi

---

2. The procedure set forth in Article 13 provided that an employee with a permanent appointment could be disciplined only for just cause, and must be served with written notice of the action. Def. Rule 7.1(f) Stat. Ex. H at 29. If the Union disagreed with the action, it could appeal the matter to the Sheriff on the employee's behalf; if the Union was dissatisfied with the appeal, it could then demand that the matter be submitted to arbitration before the New York State Public Employee Relation Board. *Id.* at 29–30.

3. The Justice Department investigation eventually led to a federal indictment filed in this Court on January 23, 1996. See Def. Rule 7.1(f) Stat. Ex. R. Plaintiff and three other correction offi-

cers were named in the indictment which charged conspiracy to violate the civil rights of the inmates during the April 29, 1994 incident. Plaintiff was charged in the conspiracy count, and in two counts of failure to prevent officers under his supervision and in his presence from assaulting the inmates. *Id.* All of the defendants in the criminal action subsequently were acquitted on all counts. Pl. Dep. at 66.

4. At the July 20 meeting, plaintiff iterated to Barnes that he would not agree to resign his lieutenant's position in settlement of the charges. Pl. Aff. ¶ 28.

asked if he could speak to plaintiff alone. Williams and Cavanaugh obliged. Once they left, Buffardi told plaintiff that the Department had a written statement from a prostitute, Gina Berthume, claiming that plaintiff had patronized her on a number of occasions.[5] Pl. Aff. ¶ 33; Buffardi Dep. at 108–115. Berthume also alleged that plaintiff accompanied her to buy crack on one occasion, though Buffardi denies revealing this to plaintiff. Buffardi Dep. at 112. Buffardi further indicated that it was the intention of Barnes and the Department's attorney, Michael Smith, to pursue disciplinary charges on this information if plaintiff should prevail in the pending arbitration. If plaintiff accepted Barnes' original offer, i .e., to withdraw the grievance and accept the loss of his position as lieutenant, the charges would not be pursued.

Plaintiff denied Berthume's allegations, and told Buffardi that he would submit to a lie detector test to that effect. Buffardi Dep. at 113; Pl. Aff. ¶ 34. Under the circumstances, however, he felt that because of the devastating impact such allegations would have on his family, he had no choice but to accept the settlement offer. Pl. Aff. at 35–36. Approximately one month later, plaintiff executed a Settlement Stipulation under which he agreed to withdraw his grievance, and was reinstated to the Department with loss of rank from Correction Lieutenant to Correction Officer. See Def. Rule 7.1(f) Stat. Ex. O. On January 17, 1995, plaintiff returned to work. He left within an hour, complaining of breathing difficulty, never to return. Pl. Aff. ¶ 40.

### B. Procedural History:

Plaintiff filed this lawsuit under § 1983 on July 6, 1995, alleging a deprivation of his due process rights under the Fourteenth Amendment to the United States Constitution, and pendent state law claims. The remaining defendants now move for summary judgment, dismissing the Complaint.

## II. DISCUSSION

### A. The Standard for Summary Judgment.

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact . . . the

moving party is entitled to a judgment as a matter of law . . . where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp. .*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 585–86. A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991)(quoting *Matsushita*, 475 U.S. at 586).

It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

### 1. Plaintiff's Federal Claims

Plaintiff brings two causes of action under § 1983:(1) deprivation of property without

---

**5.** Barnes took the statement in August of 1994. Buffardi Dep. at 98.

due process of law; and (2) deprivation of liberty without due process of law.

Plaintiff must establish three elements in support of his procedural due process claim: (1) that he had a protectible property or liberty interest; (2) that he was deprived of that interest; and (3) the deprivation was effected without due process. *Local 342, Long Island Pub. Serv. Employees v. Town Board*, 31 F.3d 1191, 1194 (2d Cir. 1994); *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir.1990) (per curiam). As to the first element, it is well-established that a property interest arises where a collective bargaining agreement between a public employer and a union protects union members from termination without just cause. *See Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991); *Dobosz v. Walsh*, 892 F.2d 1135, 1140 (2d Cir.1989). Thus, because the CBA in this case prevented defendants from terminating plaintiff or stripping him of his rank without just cause, he had a property interest in continued employment as Corrections Lieutenant.

Moreover, though plaintiff signed the settlement agreeing to accept the demotion, his allegations of coercion and duress raise a fact issue as to whether he was "deprived" of his property interest by the County. *See, e.g., Stone v. University of Md. Medical Sys., Corp.*, 855 F.2d 167, 173 (4th Cir.1988) ("If ... [the plaintiff's] resignation was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause."); *Nocera v. New York City Fire Commissioner*, 921 F.Supp. 192, 201 (S.D.N.Y.1996) (resignation from public employment may be sufficiently involuntary to give rise to due process protections if it were obtained by coercion, duress, or material misrepresentations). Instead of signing the settlement agreement, plaintiff was given the alternative of facing disciplinary (and possible criminal) charges with regard to Berthume's allegations. In light of the devastating effect plaintiff felt that such allegations would have upon his family if made public, he signed the settlement agreement.

Of course, plaintiff's choice may nonetheless have been voluntary "even where the only alternative ... [was] facing possible termination for cause or criminal charges." *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir.1995) (citing *Pitt v. United States*, 190 Ct.Cl. 506, 420 F.2d 1028 (1970)). Nevertheless, where the employer lacks good cause to believe that a basis for the termination or criminal charge exists, the choice may be involuntary. *Hargray*, 57 F.3d at 1568; *Stone*, 855 F.2d at 174; *Schultz v. United States Navy*, 810 F.2d 1133, 1136–37 (Fed.Cir.1987). Here plaintiff raises a factual issue as to whether Barnes had good cause to believe that Berthume's allegations were of any real substance. Buffardi himself admitted that the charges largely were uncorroborated, *see* Buffardi Dep. at 102–08, and plaintiff has submitted the affidavit of a former Schenectady County Correction Officer, Christopher Jeffes, who asserts that Berthume indicated to him in 1994 that Barnes had pressed her to make statements against plaintiff in exchange for a lighter sentence. Jeffes Aff. ¶¶ 1–4. Since this evidence casts doubt as to the validity of the allegations that the Department used as leverage in getting plaintiff to sign the settlement, thereby giving up his rank, plaintiff has raised a material fact issue as to whether he signed the settlement voluntarily. A reasonable jury could thus conclude that he was "deprived" of a property interest.

We thus turn to the process due plaintiff. Plaintiff seems to contend that the process due was the arbitration hearing, which he was coerced into waiving via the stipulation agreement.

Due process requires only that a hearing be held at a meaningful time and in a meaningful manner. *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). "Where a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter." *Giglio v.. Dunn*, 732 F.2d 1133, 1134 (2d Cir.), *cert. denied*, 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984). The Second Circuit has addressed the propriety of a pre-deprivation hearing under circumstances

where an employee alleges that he resigned involuntarily:

> it is hard to visualize what sort of prior hearing the Constitution would require the employer to conduct ... When an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance.

*Giglio*, 732 F.2d at 1134. In the present case, the coercion alleged by plaintiff, particularly in light of the attendant allegations that plaintiff was coerced on the basis of drummed-up charges, is precisely the sort of random and arbitrary deprivation for which an advance hearing is impractical, if not inconceivable. *See Giglio*, 732 F.2d at 1134; *see also Hudson v. Palmer*, 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

It is well-established in this Circuit that a N.Y.C.P.L.R. Article 78 proceeding provides an adequate post-deprivation remedy where a plaintiff alleges he was coerced into surrendering an employment-based property or liberty interest. *See Giglio*, 732 F.2d at 1135; *Federico v. Bd. of Educ. of the Public Schools of the Tarrytowns*, 955 F.Supp. 194, 202 (S.D.N.Y.1997); *Nocera*, 921 F.Supp. at 202; *Ludd v. Rockville Centre Union Free School Dist.*, 1990 WL 31650 at *12 (S.D.N.Y. 1990). In the present case, plaintiff's property and liberty deprivation claims are premised upon the allegation that the Department coerced him into foregoing the arbitration hearing and accepting the demotion. These are precisely the type of matters addressed in an Article 78 proceeding. *See, e.g., Hopkins v. Governale*, 222 A.D.2d 435, 634 N.Y.S.2d 526 (2d Dep't 1995); *Manel v. Mosca*, 216 A.D.2d 468, 628 N.Y.S.2d 188 (2d Dep't 1995); *Faillace v. Port Authority of New York and New Jersey*, 130 A.D.2d 34, 517 N.Y.S.2d 941 (1st Dep't 1987). Thus, the post-deprivation remedy provided by New York law is, in this instance, all the process that plaintiff was due.

"Although one need not exhaust state remedies before bringing a Section 1983 action claiming a violation of procedural due process, one must nevertheless prove as an element of that claim that state procedural remedies are inadequate." *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir.1988). Plaintiff has failed to establish that the state law remedy available to him was inadequate. Interestingly, plaintiff does not even argue that he was entitled to a pre-deprivation hearing; rather, his quarrel is with his allegedly involuntary waiver of the post-deprivation hearing to which he was entitled under the CBA. There is no question that in these circumstances, an Article 78 proceeding was an adequate remedy.

Since this analysis applies equally to plaintiff's claims of deprivation of both liberty and property, plaintiff's § 1983 claim, in its entirety, must be dismissed.

**2. Plaintiff's State Law Claims**

Because all of the claims upon which original jurisdiction was premised have been dismissed, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3).

**III. CONCLUSION:**

For all of the foregoing reasons, then, it is hereby

ORDERED, that defendants' motion for summary judgment is **GRANTED** in its entirety, and the Complaint is DISMISSED. **IT IS SO ORDERED.**