2013 OK CIV APP 104

**Tabitha Leanne STEVENS, Plaintiff/Appellant,**

**v.**

**Freddie David GRIGGS, Defendant/Appellee.**

**No. 110,918.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 25, 2013.

R. Jay Cook, Cook & Hilfiger, Muskogee, Oklahoma, for Plaintiff/Appellant.

Chad Locke, Locke Law Office, Muskogee, Oklahoma, for Defendant/Appellee.

P. THOMAS THORNBRUGH, Presiding Judge.

¶1 Appellant, Tabitha Stevens (Tabitha), appeals the decision of the district court dismissing her Petition to Establish Paternity against alleged father Freddie David Griggs (Freddie). On review, we agree with the district court that Tabitha's paternity action is barred by applicable provisions of the Oklahoma Uniform Parentage Act. The Act

clearly addresses this situation and unequivocally states a strong public policy intended to benefit and protect the parentage of children born during a marriage.[1]

## BACKGROUND

¶2 Tabitha, mother of minor child CRS, challenges the district court's decision dismissing her Petition to Establish Paternity filed in March 2012, some six years after CRS's birth in March 2006. Tabitha's stated motive in bringing the action was to establish that Freddie had a legal obligation to pay child support after he failed to live up to promises that Tabitha alleged he made while the child was an infant.

¶3 The parties agree that Freddie was married to another individual and that Tabitha was married to another individual (Husband) at the time CRS was born. Husband is not a party and did not participate in the case. The parties agree that Husband believed he was the child's father; held him out as his son; and raised him in the household as his own. The record discloses that Tabitha and Husband are still married but in the process of divorcing, and that they have two other children born during their marriage. One child was born before CRS and the other after.

¶4 The parties also agree that prior to and for some time following the child's birth they maintained an ongoing sexual relationship. Shortly after the child's birth, Tabitha and Freddie came to believe that Freddie was the biological father of the child, and Freddie made arrangements to obtain a "mail order" DNA test. Both Tabitha and Freddie believed the test accurately showed that Freddie was the biological father.[2]

¶5 After the results of "the test" were received, the parties agreed that since they were each married to someone else they would keep their belief that Freddie was CRS's biological father a secret unless Hus-

---

1. *Clark v. Edens*, 2011 OK 28, 254 P.3d 672.

2. The written results of this test were not offered into evidence. Little is revealed about it other than testimony that when the child was about two months old, Freddie sent someone to Tabitha's home to do a swab test of Tabitha and the

child. Freddie apparently sent the swabs to an on-line testing lab which reported that Freddie was the child's biological father. It is clear that whatever DNA test was done was not in compliance with the statutory requirements of the Oklahoma Uniform Parentage Act.

band found out. Five years elapsed, during which time Tabitha and CRS continued to reside in the marital home with Husband, who was apparently unaware of the situation. The secret fell apart, as all such secrets do, when someone left a note on Husband's truck at work disclosing that Freddie was the child's true father.[3] As a result of this disclosure, Tabitha and Husband separated, and were in the process of divorcing at the time of the evidentiary hearing conducted in the district court. Sadly, according to Tabitha, Husband now wants nothing to do with the child and does not want to help Tabitha financially.[4]

¶ 6 At the time of the hearing, Freddie denied paternity of CRS but admitted that, in the past, he had acknowledged to others that he was CRS's father; that he had provided some support to CRS; and that he had introduced the child to his other family members as his child. The record discloses that some effort had been made to establish a relationship between Freddie and the minor child.

¶ 7 The relationship between Freddie and Tabitha fell apart after Husband left Tabitha, and after her demands for financial support from Freddie were not met. Tabitha attempted to initiate child support proceedings against Freddie through the Muskogee Child Support Office in June of 2011, but she was advised that her application for child support services regarding Freddie could not be processed because the child was born during her marriage to Husband, Husband had taken care of the child since birth, and there was a legal presumption that Husband is the "legal father."

¶ 8 Tabitha filed this action in March 2012 in an effort to have Freddie declared the "natural father" of CRS. The trial court dismissed the action following its evidentiary hearing on Freddie's dismissal motion, and Tabitha filed this appeal.

3. The human folly of Tabitha and Freddie's pact is symbolized by the poem, *"The Secret Sits,"* in which the poet Robert Frost wrote: "We dance around in a ring and suppose, but the Secret sits in the middle and knows."

4. Husband did not testify at the evidentiary hearing; has never been joined or asked to join this

## STANDARD OF REVIEW

¶ 9 There are no underlying disputed questions of fact material to the issue presented here. Since the case presents only questions of law, we review such questions *de novo. In re Estate of Bell–Levine,* 2012 OK 112, ¶ 5, 293 P.3d 964, 966. On appeal this Court assumes "plenary independent and non-deferential authority to reexamine [the] trial court's legal rulings." *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

## ANALYSIS

### I. *TABITHA'S ACTION IS BARRED BY THE ACT'S TWO–YEAR LIMITATIONS PROVISION*

¶ 10 The Oklahoma Uniform Parentage Act, 10 O.S.2011 §§ 7700–101 through 7700–902 (The Act) applies to determinations of parentage in this state. 10 O.S.2011 § 7700–103(A). Under § 7700–204 of the Act:

A. A man is presumed to be the father of a child if:

1. He and the mother of the child are married to each other and the child is born during the marriage; . . . or

5. For the first two (2) years of the child's life, he resided in the same household with the child and openly held the child out as his own.

B. A presumption of paternity established under this section may be rebutted only by adjudication under Article 6 [§ 7700–601 *et seq.*] of the Uniform Parentage Act.

Pursuant to 10 O.S.2011 § 7700–607:

A. Except as otherwise provided in subsection B of this section, a proceeding bought by a presumed father, the mother, or another individual to adjudicate the par-

action; and has not filed any action on his own questioning his presumed paternity of the minor child. If there is a formal divorce proceeding pending between Husband and Tabitha, it is not part of this record and it is unknown what representations, if any, have been made concerning whether CRS is a child of the marriage.

entage of a child having a presumed father **shall be commenced not later than two (2) years after the birth of the child.**

B. A proceeding seeking to disprove the father-child relationship between a child and the child's presumed father may be maintained at any time in accordance with Section 7700–608 of this title if the court, prior to an order disproving the father-child relationship, determines that:

1. The presumed father and the mother of the child neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception; and

2. The presumed father never openly held out the child as his own. (Emphasis added).

¶ 11 The undisputed facts establish without a doubt that Tabitha's Husband is the "legal" and "presumed father" defined by the Act, and that Husband's status as such may only be rebutted by an action commenced not later than two years after the birth of the child. CRS was born in March 2006 and this action was filed six years later, in March 2012.

¶ 12 Because this action was not commenced within the two-year restriction of the Act, the trial court did not err when it held that § 7700–607 applies and is directly on point. The trial court astutely noted that this is exactly the kind of situation that the Act was designed to cover.[5] *See also Friend v. Tesoro,* 2007 OK CIV APP 78, 167 P.3d 978.

## II. *PUBLIC POLICY DOES NOT ALLOW THE ACTS OF THE PARTIES TO WAIVE OR TOLL THE LIMITATIONS PERIOD OF THE ACT WITHOUT THE CONSENT OF THE PRESUMED FATHER*

■ ¶ 13 Tabitha claims the two-year period prescribed by § 7700–607 was equitably "tolled" by Freddie's acceptance of the child

as his own, and by his conduct and promise that he would help provide financial support as long as Tabitha did not bring legal action. Tabitha claims she relied upon those promises to her detriment, and that Freddie is now equitably estopped from escaping his true obligations by invoking the limitations defense.

¶ 14 The fatal flaw in Tabitha's argument is that she fails to recognize that her action against Freddie is totally ineffective as to Husband's status as presumed and legal father as a matter of law. Tabitha is not permitted to 'de-establish' the paternity of the presumed father in order to obtain child support from Freddie, the alleged father, in this action.

■ ¶ 15 The private conduct of Tabitha and Freddie is totally irrelevant in determining the application of the presumption of paternity provision under the Act. The reason their conduct is irrelevant was articulated by Justice Reif in *Clark v. Edens,* 2011 OK 28, ¶¶ 11–12, 254 P.3d 672, 675–76, when he wrote:

[T]he parents are not the only parties affected by the presumption of paternity. The presumption is a matter of public policy intended for the benefit and protection of children "born during the marriage." A right based on a statute that contains provisions founded upon public policy cannot be waived by a private party, if such waiver thwarts the legislative policy the statute was designed to effectuate. *Parker v. Ind. Sch. Dist. I–003 of Okmulgee County, Oklahoma,* 82 F.3d 952, 954 (10th Cir. 1996).

Additionally the equitable principle of waiver cannot be invoked where the Legislature has provided a specific procedure by which a husband can deny paternity.

¶ 16 The statutory procedure applicable to the case at hand is set forth in 10 O.S.2011 § 7700–607(C), which provides:

---

5. We recognize that 12 O.S.2011 § 95(A)(8) provides that an "action to establish paternity and to enforce support obligations can be brought any time before the child reaches the age of eighteen (18)," and § 95(A)(9) recognizes the right of a *child* to seek a paternity determination pursuant to 10 O.S. § 7700–606. However, we reject Tabitha's argument that these provisions allow a mother 18 years to seek a paternity determination and child support against an "alleged father" when the child in question has a "presumed father" whose status as such is undisputed and has never been challenged under the Uniform Parentage Act.

A proceeding seeking to disprove the father-child relationship between a child and the child's presumed ... father may be maintained at any time if the court determines that the biological father, presumed or acknowledged father, and the mother agree to adjudicate the biological father's parentage in accordance with Sections 7700–608 and 7700–636 of this title.... In a proceeding under this section, the court shall enter an order either confirming the existing father-child relationship or adjudicating the biological father as the parent of the child. **A final order under this section shall not leave the child without an acknowledged or adjudicated father.** (Emphasis added).[6]

¶ 17 Because the current action did not include the child's presumed father, it could not have been used to disprove Husband's status as presumed father. Even if Husband had been made a party to the action, against his consent, he might well have claimed that the concept of equitable estoppel should be applied to prevent Tabitha from asserting any genetic test at this time as a ground for rebutting the presumption of Husband's paternity. *See, e.g., Clark v. Edens,* 2011 OK 28, ¶ 15, 254 P.3d 672, 677.

## III. *APPOINTMENT OF GUARDIAN AD LITEM*

¶ 18 Tabitha's claim that the trial court should have appointed a guardian ad litem for the child does not present a ground for error in this case for the reasons that (1) there was no hearing on the merits of her Petition to Establish Paternity, and (2) the petition itself was ineffective, as a matter of law, to disrupt or alter the current legal relationship between the child and his presumed father. However, in the event any subsequent proceeding is commenced pursuant to § 7700–607(C), the trial court should appoint a guardian ad litem at the expense of the parties to represent the child.

6. Tabitha's argument that the lower court has in effect determined that the child will never have a "legal" biological father is nonsensical at best.

## CONCLUSION

¶ 19 The trial court did not err in dismissing Tabitha's Petition to Establish Paternity on the grounds that her action was barred under the Oklahoma Uniform Parentage Act. The trial court was also correct in holding that the private conduct of the alleged father and the child's mother could not toll or waive the limitations period under the Act, since public policy and the express provisions of the Act itself specify the circumstances under which the presumed paternity of Husband can be adjudicated. In the event further proceedings are commenced under the Act, the trial court should appoint a guardian ad litem to represent the minor child.

¶ 20 **AFFIRMED.**

RAPP, J., and GOODMAN, J., concur.

The appropriate proceeding under § 7700–607 will not permit such an outcome.