BECK v. CANNON



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BECK v. CANNON

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BECK v. CANNON
2019 OK CIV APP 22
Case Number: 116187
Decided: 03/11/2019
Mandate Issued: 04/10/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 22, __ P.3d __

 



IN THE MATTER OF:


CORY DUANE BECK, Plaintiff/Appellee,
v.
MICHELLE CANNON, Respondent,
and
DANNY MICHAEL CRESSWELL, Intervenor/Appellant.





APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA


HONORABLE STEPHEN R. CLARK, TRIAL JUDGE





AFFIRMED





Megan D. Martin, Becki A. Murphy, MURPHY FRANCY, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellee





Blake M. Feamster, MOYERS MARTIN LLP, Tulsa, Oklahoma, for Intervenor/Appellant







JANE P. WISEMAN, VICE-CHIEF JUDGE:



¶1 Danny Michael Cresswell appeals a trial court decision denying his motion to dismiss this paternity action. We are asked in this appeal to address whether this was error. After review, we affirm the trial court's decision.


FACTS AND PROCEDURAL BACKGROUND


¶2 Cory Duane Beck filed a petition for paternity determination on June 26, 2013, alleging he was the natural father of EWB, born in March 2009. EWB's mother, Michelle Christine Cannon, also signed the petition. Beck stated that he and EWB resided in Sand Springs and Cannon resided in Broken Arrow. He asserted Cannon did not dispute his fatherhood of EWB and genetic test results showed he cannot be excluded as EWB's biological father. He asked the trial court to enter orders determining he is EWB's natural father, authorizing the State of Oklahoma to amend EWB's birth certificate to list him as EWB's natural father, and ordering that EWB's birth certificate be amended to correct his name.


¶3 A temporary order, filed July 25, 2013, indicated Beck and Cannon entered into an agreement for joint custody of EWB, with Beck receiving visitation every Friday from 6:00 p.m. through Monday at 9:00 a.m. and alternating holidays. The court ordered Beck to pay $48.47 per month for child support.


¶4 On October 11, 2013, the trial court filed a "Decree of Paternity and Order of Custody, Visitation and Child Support." The order noted Beck and Cannon appeared pro se and approved the terms of the decree. The court found it had jurisdiction over the parties and the minor child and that Beck is the child's biological father as determined by DNA testing. The court adjudicated Beck as EWB's father and ordered EWB's birth certificate amended to identify Beck as his father. The court awarded Beck and Cannon joint custody of EWB, with Cannon having primary physical custody. The joint custody plan provided Beck would have visitation every Friday after school until "Monday morning at school" and Cannon would have visitation every Monday after school through "Friday morning at school." The joint custody plan also set out a holiday visitation schedule. The trial court ordered Beck to pay child support in the amount of $48.47 per month.


¶5 On August 4, 2014, Beck filed a motion to modify custody and child support alleging a change of condition. He asserted EWB "has been residing with [Beck] and [Cannon] 50/50 visitation (2/2/3) since May 30, 2014." He alleged EWB "has been enrolled in Sand Springs Public Schools under [Beck's] address" and EWB "had excessive absences and tardiness at school last year during [Cannon's] time."


¶6 On September 16, 2016, Cannon filed a motion to vacate alleging that, at the time of EWB's birth, she was married to Cresswell. She alleged Cresswell is EWB's presumptive father, has parental rights, and is a necessary party to the proceedings. She claimed Beck did not timely bring his paternity action because he waited more than 4 years to establish paternity.


¶7 In his response and amended response, Beck alleged Cresswell executed a denial of paternity on February 24, 2011.


¶8 Cresswell filed a special appearance on October 24, 2016, "as a necessary third-party pursuant to 10 O.S. § 7700-607." A week later, Cresswell filed a motion to dismiss alleging that "the relief requested fails to state a claim upon which relief can be granted because the relief requested is time barred pursuant [to] 10 O.S. § 7700-607." He alleged he married Cannon in January 2003 and EWB was born in March 2009. Cresswell was listed as EWB's father on his birth certificate. He alleged he executed a denial of paternity "[o]n February 24, 2011, while mobilized with the military in Fort Dix, New Jersey, based upon the knowledge that he was not the biological father of [EWB], without being represented by counsel, and without any understanding that he had any legal rights to [EWB]." Cresswell's and Cannon's divorce decree from September 13, 2011, "indicated that there were no children of the marriage." However, Cresswell said he has maintained a relationship and regularly exercised visitation with EWB. He alleged it was not until after EWB turned four years-old that Beck filed his petition for paternity. Cresswell claimed Beck did not execute an acknowledgement of paternity (AOP) before filing his petition. Cresswell argued that his denial of paternity (DOP) is not valid without a valid acknowledgement of paternity from Beck. He asserted, therefore, that he is still the presumed father of EWB. He further asserted that the trial court did not have jurisdiction because Beck failed to bring an action to determine paternity within two years of EWB's birth.


¶9 Cresswell also filed a "Special Motion to Intervene as of Right," which the trial court granted.


¶10 In his response to the motion to dismiss, Beck stated that he and Cannon both signed an AOP. Cannon dated her signature October 22, 2009, but Beck dated his signature October 22, 2011. Beck alleged that in the petition for divorce, Cresswell stated, "There were no children born to or adopted by the Parties" and the divorce decree also provides no children were born of Cannon's and Cresswell's marriage. Beck noted that the decree of paternity entered on October 11, 2013, granted him visitation every weekend, but after the paternity decree was entered, he "ended up having physical custody of the minor child at least half of the time." According to Beck, after he filed a motion to modify the decree in August 2014, Cannon "changed her legal position, suddenly arguing that the minor child had a presumed father that was not noticed of the proceedings and requesting the paternity, custody, and child support orders be vacated as a result."


¶11 Beck asserted Cresswell was not a presumed father at the time the action was filed because Beck had signed and filed an AOP and Cresswell had signed a DOP before EWB turned two years-old. He further argued Cresswell is equitably estopped from asserting paternity based on the position he took in his divorce petition. Beck also asserted it is not in EWB's best interest to dismiss the paternity action.


¶12 Cresswell asserted that, because Beck did not execute the AOP until October 22, 2011, which was after EWB turned two, the DOP and AOP are not valid.


¶13 A hearing on Cresswell's motion to dismiss was held on May 1, 2017. Cresswell testified EWB was born during his marriage to Cannon and EWB's last name on his birth certificate was originally Cresswell. Cannon and Cresswell were divorced in 2011. Neither party was represented by or consulted with an attorney in the divorce proceedings. Cresswell learned that he was not EWB's biological father in late August or September 2010. He testified he executed a DOP in January or February 2011. When asked why he executed the DOP, he stated: "Mr. Beck was going to take responsibility of the child. Michelle Cannon also wanted him to be the father, and I thought that, since he was the biological father, that he would be responsible." He claimed he did not know until after he executed the DOP that he had "rights to the child." He was never served a petition in the paternity case. Cresswell stated he has ongoing visitation and consistent contact with EWB.


¶14 On cross-examination, Cresswell testified that he stated in the petition for divorce that no children were born of the marriage because he understood at the time that no children were born of the marriage. He also made a declaration to the court in the divorce proceedings that no children were born of the marriage. When he was asked if he knew "all along" that the paternity action was pending, he replied, "Yes." Cresswell has not and does not pay child support for EWB, and EWB does not call Cresswell "Dad."


¶15 Beck testified he had a paternity test performed when EWB was 15 months-old, and he is EWB's biological father. He pays child support for EWB, and EWB calls him "Dad." Cresswell voluntarily sent him the DOP which Cresswell executed within the first two years of EWB's life. When he questioned Cresswell about why he was going to claim paternity of the child, Cresswell told him "he wanted to work as a mediator between [Beck] and [Cannon] because we couldn't get along on the benefit of [EWB] and what's best for [EWB]."


¶16 On cross-examination, Beck stated that Cannon "said from the beginning" he was EWB's biological father, but he did not have definite proof until 15 months later after a DNA test. Beck's signature on the AOP is dated October 22, 2011. Beck did not file the DOP with DHS after Cresswell sent it to him.


¶17 Cannon testified that she also led the court in the divorce case to believe there were no children born of her marriage with Cresswell. She did not object to EWB's last name being changed to Beck, and she filed the paternity action jointly with Beck. According to Cannon, Cresswell was well aware the "paternity action was going on." She agreed that in the paternity action, she "swore under penalty of perjury then that Mr. Beck was the father of the child." She has been receiving child support from Beck since 2013. Cannon testified she could not have signed the AOP on October 22, 2009, but she did sign it.


¶18 On cross-examination, Cannon testified the date appearing on her AOP signature was wrong because she and Beck "weren't even discussing this in October of 2009." She said she did not intend to mislead the court about paternity, and she did not serve Cresswell notice of the paternity action.


¶19 Cresswell testified he first saw the legal documents "fairly shortly after they were officially filed" because Cannon had him "look at them before for her." Cresswell stated: "My assumption at the time was that the paternity issue had already been resolved, so, again, I'm not a lawyer, but my understanding was just simply a custody thing, and that Mr. Beck had already taken care of the paternity portion of it." Although he was aware of the name change shortly after it occurred, he did not vocalize an objection after he knew of the name change, the custody determination, or the paternity action. He did not tell Beck he wanted to be EWB's dad. Cresswell stated that when the paternity action was filed, he had no idea he had any legal rights to custody of EWB.


¶20 The trial court announced its decision on May 3, 2017. The court made findings that we now summarize and quote. EWB was born on March 28, 2009. On February 24, 2011, Cresswell executed his DOP and filed for divorce from Cannon on August 19, 2011. "In the petition and in the decree, [Cresswell] alleged that no children were born of this marriage." Beck executed the AOP on October 22, 2011. On June 23, 2013, Beck and Cannon filed a joint petition for paternity. On October 11, 2013, Beck and Cannon filed an agreed decree of paternity that established joint custody, set child support, set a visitation schedule, and provided EWB's last name should be changed to Beck. Beck had already been added to EWB's birth certificate as his father. Although Cresswell was aware of the paternity action, he did not receive legal notice of the proceedings.


¶21 The court found that the issues presented in this case are resolved by 10 O.S. §§ 7700-304, 7700-305. The court concluded:

Section 7700-304 provides that acknowledgements and denials need not be executed simultaneously, and that neither is valid until both are executed.

By executing the denial of paternity, [Cresswell] reserved his option to withdraw his denial. [Cresswell] has never requested that the denial be withdrawn. Had it been withdrawn prior to [Beck's] execution of the acknowledgement, then [Cresswell] would have had a legal position to claim to be the presumed father.

Section [7700-305] provides that if a denial is executed by the presumed father, then when a valid acknowledgement is executed, the execution of the acknowledgement makes the denial valid. And the combination of the two is equivalent to an adjudication of the nonpaternity of the presumed father ([Cresswell] in this instance), and discharges him from all rights and duties of the child.


¶22 The court found that Cresswell "is not the presumptive father and has no rights with regard to the minor child." The court denied Cresswell's motion to dismiss and also denied Cannon's motion to vacate. The trial court filed an order on June 14, 2017, granting Cresswell's motion to intervene, granting a hearing on the motion, denying his motion to dismiss, and denying Cannon's motion to intervene.


¶23 Cresswell appeals.


STANDARD OF REVIEW


¶24 Cresswell's motion to dismiss was titled "Motion to Dismiss Pursuant to 10 O.S. § 7700-607," which addresses limitations of actions and states, "Except as otherwise provided in subsection B of this section, a proceeding brought by a presumed father, the mother, or another individual to adjudicate the parentage of a child having a presumed father shall be commenced not later than two (2) years after the birth of the child."[1] 10 O.S.2011 § 7700-607(A). Therefore, Cresswell's motion to dismiss was based on his assertion the claim was barred by the statute of limitations.


¶25 "'A statute-of-limitations issue ordinarily presents a mixed question of fact and law.'" Volkl v. Byford, 2013 OK CIV APP 73, ¶ 4, 307 P.3d 409 (quoting Sneed v. McDonnell Douglas, 1999 OK 84, ¶ 9, 991 P.2d 1001). However, where the "matter was presented as a motion to dismiss . . . the standard of review before the court is de novo." Volkl, 2013 OK CIV APP 73, ¶ 4 (citing Hayes v. Eateries, Inc., 1995 OK 108, ¶ 2, 905 P.2d 778).


ANALYSIS


¶26 The Oklahoma Uniform Parentage Act provides, "A man is presumed to be the father of a child if . . . [h]e and the mother of the child are married to each other and the child is born during the marriage." 10 O.S.2011 § 7700-204(A)(1). "A presumed father may sign a denial of his paternity." 10 O.S.2011 § 7700-303. The denial, however, is only valid if the following requirements are met:

1. An acknowledgment of paternity signed, or otherwise authenticated, by another man is filed pursuant to Section 20 of this act;

2. The denial is in a record, and is signed, or otherwise authenticated, under penalty of perjury;

3. The presumed father has not previously:

a. acknowledged his paternity, unless the previous acknowledgment has been rescinded pursuant to Section 15 of this act or successfully challenged pursuant to Section 16 of this act, or

b. been adjudicated to be the father of the child; and

4. The denial is signed not later than two (2) years after the birth of the child.


(Footnotes omitted.) Cresswell admitted he signed a DOP on February 24, 2011, and that he sent the DOP to Beck. Thus the DOP was executed within two years of EWB's birth on March 28, 2009. After he signed the DOP, Cresswell represented in his divorce proceedings that no children were born of his marriage with Cannon.


¶27 Beck then signed an AOP on October 22, 2011. Title 10 O.S.2011 § 7700-304 provides in relevant part:

A. An acknowledgment of paternity and a denial of paternity may be executed separately or simultaneously. If the acknowledgment and denial are both necessary, neither is valid until both are executed.

B. An acknowledgment of paternity or a denial of paternity may be signed before the birth of the child.

C. Subject to subsection A of this section, an acknowledgment of paternity or denial of paternity takes effect on the birth of the child or the execution of the document, whichever occurs later.


(Emphasis added.) Pursuant to the terms of § 7700-304, the AOP took effect on the execution of the document, which was October 22, 2011. We agree with the trial court that Cresswell's DOP became valid after Beck executed his AOP. We further agree with the trial court that the combination of the AOP and DOP was "equivalent to an adjudication of the nonpaternity of the presumed father ([Cresswell] in this instance), and discharges him from all rights and duties of the child." Further indication that Cresswell thought his rights and duties to EWB were discharged was Cresswell's assertion in his petition for divorce that "[t]here were no children born to or adopted by the Parties" and that he paid no child support for the child.


¶28 Cresswell asserts on appeal: Cresswell is the "presumed father of the Minor Child because . . . the Acknowledgement of Paternity is void." Pursuant to 10 O.S. § 7700-302(B)(1), "[a]n Acknowledgement of Paternity shall be void . . . unless a denial of paternity . . . is filed with the State Department of Health, Division of Vital Records." (Emphasis omitted.) The full text of § 7700-302(B) states: "An acknowledgment of paternity shall be void if it: 1. States that another man is a presumed father, unless a denial of paternity signed or otherwise authenticated by the presumed father is filed with the State Department of Health, Division of Vital Records." 10 O.S.2011 § 7700-302. This provision appears to conflict in part with § 7700-304(C), which provides, "an acknowledgment of paternity or denial of paternity takes effect on the birth of the child or the execution of the document, whichever occurs later."


¶29 In Bates v. Copeland, 2015 OK CIV APP 30, 347 P.3d 318, this Court concluded an AOP executed by the mother and the purported biological father of a child was not void but voidable where the two signed an AOP that incorrectly stated the mother was not married at the time of conception or birth. The purported biological father filed an action to determine paternity. Id. ¶ 1. The mother's husband "filed a Notice of Another Action Pending, i.e., the action for dissolution of the marriage, and Motion to Stay proceedings in the paternity action." Id. ¶ 6. Husband later filed a motion to vacate the AOP and a motion to dismiss the paternity proceeding, which the trial court granted. Id. ¶¶ 6, 8.


¶30 The purported biological father argued on appeal "that the AOP he and Mother executed, where they falsely stated Mother was not married at the time of conception, is, at best, voidable under 10 O.S. § 7700-302(C), not void under 10 O.S. § 7700-302(B)." Id. ¶ 9. Section § 7700-302(C) provides: "An acknowledgment of paternity is voidable if it falsely denies the existence of a presumed, acknowledged, or adjudicated father of the child." 10 O.S.2011 § 7700-302. The Court noted,

"[A]n act declared to be void by statute which is malum in se or against public policy is utterly void and incapable of ratification, but an act or contract so declared void, which is neither wrong in itself nor against public policy, but which has been declared void for the protection or benefit of a certain party, or class of parties, is voidable only and is capable of ratification by the acts or silence of the beneficiary or beneficiaries . . . such an act or contract is valid until voided, not void until validated, and it is subject to ratification and estoppel.'" (Citations omitted.)


Id. n. 1. The Court of Civil Appeals found that the mother's husband was the child's presumed father. Id. ¶ 15.

[The] presumption of paternity cannot be displaced absent either (1) an adjudication of his non-paternity by a court of competent jurisdiction (a) in an action for divorce as permitted by 43 O.S. §109.2, or (b) as mandated by §7700-204(B), in a timely commenced action under 10 O.S. §7700-607, or (2) a timely, validly executed and filed denial of paternity as prescribed by 10 O.S. §7700-303 and §7700-305(B).


Id. The Court found no trial court error in vacating the AOP executed by the mother and purported biological father. Id. ¶ 18.


¶31 This case differs from Bates in that Cannon and Beck executed the AOP indicating Mother was married at the time of conception or birth and Cresswell executed the DOP. The only thing alleged not to have been done here that was required by statute was Beck's failure to file the AOP, with an attached DOP, with the State Department of Health, Division of Vital Records.


¶32 The fact that Cresswell's and Cannon's divorce decree states there were no children born of the marriage is not determinative of the issue before us. In Clark v. Edens, 2011 OK 28, ¶ 7, 254 P.3d 672, the Supreme Court noted: "A pleading or other representation that informs the court that there are no children of the marriage simply removes such issues from determination." The Court concluded: "A finding in a divorce decree that there are no children of the marriage would not necessarily resolve the parties' relationship to an undisclosed child born during the marriage and subject to the statutory presumption of paternity." Id.


¶33 Also important to our analysis here is the Clark Court's acknowledgement that "the parents are not the only parties affected by the presumption of paternity." Id. ¶ 11. The presumption of paternity "is a matter of public policy intended for the benefit and protection of children 'born during the marriage.'" Id.; see also Stevens v. Griggs, 2013 OK CIV APP 104, ¶ 1, 362 P.3d 662 (stating the Oklahoma Uniform Parentage Act "unequivocally states a strong public policy intended to benefit and protect the parentage of children born during a marriage"). The Clark Court instructed: "A right based on a statute that contains provisions founded upon public policy cannot be waived by a private party, if such waiver thwarts the legislative policy the statute was designed to effectuate." Clark, 2011 OK 28, ¶ 11. The statute protected EWB as intended because Beck acknowledged paternity after Cresswell executed a DOP and Beck assumed his parental duties. Keeping in mind the strong public policy served by the statute, this is a situation in which the AOP and DOP should be viewed as voidable, not void.


¶34 Title 10 O.S.2011 § 7700-305 provides:

A. Except as otherwise provided in Sections 15 and 16 of this act, a valid acknowledgment of paternity signed by both parents is equivalent to an adjudication of paternity of a child and confers upon the acknowledged father all of the rights and duties of a parent.

B. Except as otherwise provided in Sections 15 and 16 of this act, a valid denial of paternity by a presumed father when executed in conjunction with a valid acknowledgment of paternity is equivalent to an adjudication of the nonpaternity of the presumed father and discharges the presumed father from all rights and duties of a parent.


(Footnote omitted.)


¶35 Beck's alleged failure to file the AOP and DOP cannot serve as a basis for dismissing the paternity action more than three years after the trial court entered its decree of paternity. First, Cresswell admitted he executed the DOP and sent it to Beck. Beck and Mother voluntarily and jointly executed an AOP. Cresswell claims Beck's failure to file the document with the State Department of Health voids the AOP and DOP. We disagree with Cresswell that any error in this regard automatically made the AOP and DOP void; at best, they would be considered voidable at any point before the trial court entered the decree of paternity. It is undisputed that Cresswell made no attempt to withdraw his DOP and that he never held himself out to be EWB's father or paid child support for him. Cresswell admitted he had actual knowledge of the paternity proceedings and that he looked at the legal documents "fairly shortly after they were officially filed." Although Cresswell knew the paternity action was ongoing, he did not claim that his DOP was invalid before the entry of the trial court's decree of paternity, and instead waited more than three years after the decree was entered to file his motion to dismiss. Even if the AOP and DOP were not valid, the trial court entered a decree of paternity in a proceeding of which Cresswell had actual knowledge. After de novo review of this case, we conclude the trial court did not err in denying Cresswell's motion to dismiss the paternity proceeding.


¶36 We further conclude Cresswell's statute of limitations defense was not timely raised. Although he admitted he had actual notice of the paternity action, he waited three years to file a motion to dismiss the proceedings. In fact, he waited to file his motion to dismiss until well after the order establishing paternity had been entered. Cresswell cites no statute or case law that supports his attempt to dismiss a claim based on a statute of limitations defense after a final order, in this case an order establishing paternity, has been entered.


CONCLUSION


¶37 Finding no error, we conclude, as the trial court did, that Cresswell's motion to dismiss should be denied, and we affirm that decision.


¶38 AFFIRMED.




BARNES, P.J., and THORNBRUGH, J. (sitting by designation), concur.





FOOTNOTES




[1] Title 10 O.S. § 7700-607 was amended in 2014, but the quoted portion of the statute remains unchanged. In his motion to dismiss, Cresswell argued that the subsection added to § 7700-607 by the 2014 amendment does not apply in this case.










 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA